# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04-CV-0227-CVE-FHM ) |
| MICHAEL S. TOLLIVER and SANDRA L. TOLLIVER, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Plaintiff's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 46). Scottsdale Insurance Company ("Scottsdale") asks the Court to grant summary judgment on its claim for declaratory relief and to deny defendants' counterclaims for breach of contract and bad faith. Defendants object on the ground that there are genuine issues of material fact which preclude summary judgment on all pending claims.

## I.

On September 23, 2002, Sandra and Michael Tolliver ("the Tollivers") completed a Dwelling Fire Application ("application") for insurance from Scottsdale Insurance Company.[1] The application was for property insurance for the home located at 1735 East 31st Street, Tulsa, Oklahoma ("the property"). The Tollivers requested a maximum amount of coverage of $260,000 for fire damage to the property. The application form required the applicant to provide a loss history, which included "any losses, whether or not paid by insurance, during the last 3 years at this or at any other

---

[1] There is no dispute that Sandra Tolliver completed and signed the application on behalf of both defendants.

location." Dkt. # 46, Ex. A, Application, at 2. The Tollivers listed a prior claim for hail damage valued at $5,000, but did not list any other insurance claims during the last three years.

Everett Salley ("Salley") served as the Tollivers' insurance agent for the application process and was responsible for submitting the application to Scottsdale's underwriter for approval. Salley submitted the application to Westphalen Insurance Services ("Westphalen"), where Vanessa Bagwell ("Bagwell") reviewed the application. On September 24, 2002, Scottsdale accepted the Tollivers' application for fire dwelling insurance upon approval by Bagwell. The application did not go to Scottsdale for underwriting, because Bagwell did not notice anything that required submission to Scottsdale under the underwriting guidelines provided by Scottsdale. Salley had also assisted the Tollivers in submitting an application for coverage from Lloyd's of London for the same property. Bagwell testified in her deposition that she organizes files by insured and that she could have accessed information in the Lloyd's of London application while underwriting the Tollivers' application for insurance from Scottsdale. The Lloyd's of London application states that the "insureds have had some claims on rental properties," but they did not list the substance of these claims on the Lloyd's of London application.

On March 29, 2003, the Tollivers reported a fire at the property.[2] The Tulsa Fire Department noted that the fire started in the basement of the home and spread through the two upper floors, causing "major" damage. The fire department also noticed that this was the third fire at a residence owned by the Tollivers within Tulsa. The Tollivers reported the fire to Scottsdale and filed a claim for $260,000 to reimburse them for fire-related damage. Upon investigation, Scottsdale found that

---

[2] The Tollivers did not occupy the property as their primary residence. Sometime after applying for insurance from Scottsdale and before the fire, the Tollivers rented the property to Sam Hill. At the time of the fire, it is not clear if Mr. Hill was still residing there.

2

the Tollivers had failed to list the three following fire damage claims that had occurred within three years of their application: 1) on October 14, 2000, the Tollivers reported an $80,000 total loss claim for fire damage at a commercial property they owned in Claremore, Oklahoma; 2) on May 13, 2001, a fire occurred at 1208 South Indian, a residential property owned by the Tollivers in Tulsa, Oklahoma; and 3) on November 6, 2002, a fire caused $100,000 of damage to the Tollivers' residential property located at 3522 South Joplin in Tulsa, Oklahoma.[3] The Tollivers do not dispute that they were aware of these three claims. Scottsdale denied the Tollivers' claim for fire loss on the basis that the Tollivers' application for insurance contained material misrepresentations or false statements.[4] According to Scottsdale, based on its underwriting guidelines it would have automatically denied the Tollivers' application for fire insurance because they had two fire claims within the previous three years.

The policy covers the subject property for damage caused by fire or lightning, storms or hail, explosion, riots, aircraft, vehicles, smoke, volcanic eruption and vandalism. Scottsdale is not contesting that the Tollivers' fire loss claim would have qualified for coverage absent Tolliver's misrepresentations regarding their prior losses on the application. The policy discusses the effect of concealment or fraud:

> With respect to all persons insured under this policy, we provide no coverage for loss if, whether before or after a loss, one or more persons insured under this policy have:

---

[3]  Scottsdale also uncovered a residential theft claim for $14,500 that Michael Tolliver made against a State Farm homeowners insurance policy.

[4]  Scottsdale investigators allegedly provided some evidence that the fire was intentionally set. However, the basis listed for denying the Tollivers' claim was fraud, misrepresentation and concealment and the Tollivers dispute that the fire was intentional.

      a.  intentionally concealed or misrepresented any material fact or circumstance;

      b.  engaged in fraudulent conduct; or

      c.  made false statements;

relating to this insurance.

Dkt. # 46, Ex. F, Dwelling Policy Declarations, at 13. For Oklahoma policies, Scottsdale includes an additional provision relating to fraud, which states that "[a]ny person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing any false, incomplete or misleading information, is guilty of a felony." Id. at 19. After receiving a claim, Scottsdale has the duty to "submit a written offer of settlement or rejection of the claim, or notice of the need for more time to investigate the claim, to [the insured] within forty-five (45) days of receipt of the proof of loss. Id. at 15.

      Scottsdale brought this declaratory judgment action against Sandra and Michael Tolliver, asking the Court to uphold its denial of the Tollivers' insurance claim and seeking rescission of the policy. The Tollivers have counterclaimed, alleging that Scottsdale has breached the insurance contract by refusing to pay their claim and that Scottsdale has acted in bad faith. Scottsdale has filed a motion for summary judgment on the grounds that: 1) the Tollivers have no evidence that Scottsdale denied their claim in bad faith; 2) Scottsdale did not breach the contract by failing to pay the claim, because it had a right to rescind the insurance policy due to the Tollivers' fraudulent acts; and 3) Scottsdale is entitled to declaratory relief upholding its decision to deny the Tollivers' claim.

## II.

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327 (citations omitted).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff. Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Scottsdale argues that the Tollivers are not entitled to proceed to a jury on their claim for bad faith because Scottsdale had a legitimate basis for denying their fire loss claim. The Tollivers respond that Scottsdale failed to conduct a timely investigation of the application and that it acted in bad faith by denying their claim.

The Oklahoma Supreme Court first recognized a cause of action for bad faith against an insurer in Christian v. American Home Assurance Company, 577 P.2d 899 (Okla. 1977). In Christian, the court stated that:

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

Id. at 905. The insurer does not act in bad faith by "refusing to pay a claim or litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989). In order to succeed on a claim for bad faith, the claimant must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim. Badillo v. Mid Century Ins. Co., 121 P.3d 1080 (Okla. 2005). The Court can consider only the "facts known or knowable about the claim at

the time the insured requested the insurer to perform its contractual obligation." Sims v. Travelers Ins. Co., 16 P.3d 468, 471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).

The Tollivers claim that Scottsdale had a duty to conduct an adequate investigation, and they argue that Scottsdale acted in bad faith by initially failing to investigate the facts in the Tollivers' application. When an insured makes a claim under an insurance policy, the insurer has a duty to treat its insured with good faith and conduct an adequate investigation of the claim. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 612 (10th Cir. 1994) (citing Buzzard v. McDaniel, 736 P.2d 157, 159 (Okla. 1987)). An insurer can not be held liable for bad faith by failing to investigate the factual statements in an application for insurance coverage. Hays v. Jackson National Life Ins. Co., 105 F.3d 583, 590 (10th Cir. 1997); Marshall v. Universal Life Ins. Co., 831 P.2d 651, 653 (Okla. Civ. App. 1992). Scottsdale fulfilled its duty to investigate the Tollivers' claim, and uncovered evidence unfavorable to the Tollivers. However, it had no legal duty to investigate the Tollivers' application for factual misrepresentations or inaccuracies. Therefore, failure to do so does not create a basis for a bad faith claim under Oklahoma law.

Sandra Tolliver claims that she informed her insurance agent of her prior fire loss claims and that this knowledge is imputed to Scottsdale. The agent, Salley, refutes her claim, but it is not necessary to resolve the factual dispute in order to rule on Scottsdale's motion for summary judgment. As a matter of law, the agent's knowledge is not imputed to the insurer in the context of a bad faith claim. In Oulds v. Principal Mutual Life Insurance Company, 6 F.3d 1431 (10th Cir. 1999), the Tenth Circuit rejected the argument offered by the Tollivers. In Oulds, Jaclyn Oulds claimed that she informed Principal Mutual Life Insurance Company's ("Principal") agent about a

7

preexisting health problem, but that the agent neglected to include this information on the application. When Oulds made a claim for medical benefits, Principal denied the application on the ground that Oulds intentionally failed to omit material information about her medical history. Id. at 1438-39. The agent denied Oulds' allegations. The Tenth Circuit held that the insurer could rely on its agent's denial as a legitimate basis to dispute coverage and that even if the court assumed Oulds had provided the agent all the information she claimed, this would not preclude summary judgment. Id. at 1440. For purposes of a bad faith claim, the court interpreted City National Bank and Trust Company v. Jackson National Life Insurance, 804 P.2d 463 (Okla. 1991), to prevent the agent's knowledge from being imputed to the insurer. Absent the agent's knowledge, the court found that the insurer had no prior knowledge of Ould's relevant medical history and was entitled to summary judgment on her claim of bad faith.

In this case, Salley's knowledge is not imputed to Scottsdale for purposes of the Tollivers' bad faith claim. Based on the information Scottsdale uncovered during its investigation of the Tollivers' fire loss claim, Scottsdale found serious discrepancies between the Tollivers' application and their actual loss history. The Tollivers claim that the underwriter was aware of their loss history at the time she approved their application for coverage with Scottsdale because it was in her underwriting file for the Tollivers.[5] However, the information the Tollivers refer to was included a separate application for insurance coverage through Lloyds of London and they have not cited any precedent that would hold Scottsdale responsible for information contained in an application to a

---

[5] The Tollivers' claim that Bagwell was a "managing general agent" who may act directly on behalf of the insurer. See Okla. Stat. tit. 36, § 1476. However, Okla. Stat. tit. 36, § 1472(3) limits the circumstances when an underwriter qualifies as a managing general agent and the Tollivers do not offer any arguments or evidence that Bagwell meets this definition or would not be excluded under one of the exceptions in the statute.

different insurance company. Also, the Court has reviewed the Lloyd's of London application and finds that it does not list the rental property claims which Scottsdale claims were omitted from the Tollivers' application. The relevant inquiry for the Tollivers' bad faith claim is whether "the [insurer's] agents who denied [the Tollivers'] claim actually knew or should have known that [the Tollivers'] application for insurance did not contain intentional misrepresentations." Oulds, 6 F.3d at 1441. The Court concludes that Scottsdale should not be imputed with the knowledge of Salley or Bagwell, nor have the Tollivers introduced any evidence that either Salley or Bagwell informed Scottsdale about any prior losses not disclosed on the application. The record before Scottsdale at the time it denied the Tollivers' claim contained evidence that their application contained material misrepresentations of which Scottsdale was previously unaware.

Absent any imputed knowledge of Salley or Bagwell, there is no evidence in the summary judgment record that Scottsdale acted in bad faith. The omissions on the application created an inference of fraud and misrepresentation, which created a legitimate basis for Scottsdale to conclude it may be able to rescind the policy. The Oklahoma Supreme Court allows insurers to raise fraud as a defense to a bad faith claim and introduce evidence of the insured's fraudulent statements or omissions on an application. Roark v. Shelter Mut. Ins. Co., 731 P.2d 389, 390 (Okla. 1986) ("As a general rule, evidence of fraud by either party to induce the other to enter a contract is admissible to prevent a party from perpetuating the fraud from profiting thereby."). The case law is clear that concealment of previous losses, whether or not intentional, presents a basis for a legitimate coverage dispute. Vining v. Enterprise Financial Group, Inc., 148 F.3d 1206, 1213 (10th Cir. 1998); Oulds, 6 F.3d at 1437-39; Claborn v. Washington National Ins. Co., 910 P.2d 1046, 1051 (Okla. 1996); Hobbs v. Prudential Property & Cas. Co., 853 P.2d 252, 254 (Okla. Civ. App. 1993). Although the

9

Tollivers repeatedly assert that they did not intentionally deceive Scottsdale by omitting their prior claims history, this is not relevant to their claim that Scottsdale acted in bad faith. This also does not create a genuine issue of material fact preventing summary judgment. Oulds, 6 F.3d at 1441. The summary judgment record shows that, as a matter of law, the Tollivers have not introduced any evidence that Scottsdale acted in bad faith.

The Court finds that Scottsdale had a legitimate basis to deny the Tollivers' claim and its motion for summary judgment should be granted as to the Tollivers' bad faith claim.

**IV.**

Scottsdale claims that the Tollivers can not prevail on their breach of contract claim, because the evidence is clear that they intended to deceive Scottsdale by withholding their loss history on their application. The key issue for the Tollivers' contract claim, as well as Scottsdale's declaratory judgment action, is whether the record shows that the Tollivers acted with an intent to deceive their insurer by omitting prior losses on their application. This Court submitted a certified question to the Oklahoma Supreme Court to clarify the applicability of section 3609 to this case.[6] The Oklahoma Supreme Court declined to answer the certified question on the basis that there was already controlling precedent on this issue of Oklahoma law, stating that "this Court requir[es] a finding of insured's intent to deceive an insurer before a misrepresentation, an omission or incorrect statement in an application can avoid the policy under § 3609." Scottsdale Ins. Co. v. Tolliver, 127 P.3d 611, 614 (Okla. 2005). Applying this interpretation of section 3609, the Court finds no

---

[6] The Oklahoma Supreme Court was asked to decide "[w]hether Oklahoma law requires a finding that the insured intended to deceive the insurer before a misrepresentation, omission, or incorrect statement on an insurance application can serve as a ground to prevent recovery under the policy pursuant to Okla. Stat. Tit. 36, § 3609."

10

evidence in the record which would allow the Court to grant summary judgment on the basis that the Tollivers intended to deceive Scottsdale by omitting prior losses on their application. This finding precludes summary judgment on the Tollivers' breach of contract claim and on Scottsdale's declaratory judgment claim.

In order to prove a claim for breach of contract, the Tollivers must prove that: 1) a contract was formed between the parties; 2) Scottsdale breached the contract by refusing to pay the claim; and 3) they suffered damages as a result of that breach. See Young v. Thomas, 930 P.2d 836, 839 (Okla. Civ. App. 1996). Even if the Tollivers can not proceed on a bad faith claim against Scottsdale, they may continue to assert a claim for breach of contract and attempt to recover benefits under the insurance policy. Hays, 105 F.3d 583; Marshall, 831 P.2d 651.

Scottsdale rests its entire argument for rescinding the contract on the ground that the Tollivers intentionally failed to include a complete claims history on their application. According to Scottsdale, it would not have issued the policy if it had known all of the facts, making the Tollivers' omission material. Section 3609 provides that:

> A. All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1. Fraudulent; or
>
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

This section allows an insurer to rescind a policy only when there is evidence that the insured intended to deceive the insurer. Vining, 148 F.3d at 1215; Hays, 105 F.3d at 588; Matlock v. Texas Life Ins. Co., 404 F. Supp. 2d 1307, 1313 (W.D. Okla. 2005); Claborn, 910 P.2d at 1049; Brunson v. Mid-Western Life Ins. Co., 547 P.2d 970, 973 (Okla. 1976); Massachusetts Mut. Life Ins. Co. v. Allen, 416 P.2d 935, 936 (Okla. 1965). When there is conflicting evidence about the intent of the insured, summary judgment is not appropriate. Hays, 105 F.3d at 589.

Scottsdale cites Hobbs v. Prudential Property & Casualty Company, 853 P.2d 252 (Okla. Civ. App. 1993), as a case where the court granted summary judgment in a breach of contract case similar to this one. In Hobbs, Michael Hobbs applied for homeowners insurance with Prudential Property & Casualty Company ("Prudential"). His home was burglarized and he filed a theft claim with Prudential. Prudential denied the claim because, on his application for insurance, Hobbs failed to disclose five theft claims that had occurred in the previous three years. Hobbs claimed that Prudential's agent filled out the application and did not ask about previous losses. He also claimed that Prudential could have checked his claims history by performing an independent investigation. Id. at 253. The Oklahoma Court of Civil Appeals affirmed the trial court's decision to grant summary judgment in favor of Prudential. However, Hobbs raised only one genuine issue of material fact in his response brief and the trial court rejected the affidavits he used to dispute Prudential's contention that its agent asked about prior losses.[7] The court found no evidence in the record to dispute Prudential's contention that it asked about prior losses, and Hobbs' bare assertion

---

[7] Hobbs submitted affidavits expressly based upon "information and belief" and did not include any statements of positive fact. Id. at 254-55. Under Oklahoma law, these affidavits were inadequate and could not be considered as a matter of law. Therefore, there was no evidence in the record controverting any statement of material fact asserted by Prudential.

that he did not intend to deceive Prudential was insufficient. The Court also rejected his argument that Prudential had a duty to investigate the loss history provided in the application, as the insurer does not have a duty to conduct an investigation of the facts in the application. Id. at 255.

Scottsdale also relies heavily on Claborn. In that case, Robert Claborn applied for health insurance but failed to disclose his seizure disorder related to alcoholism. Washington National Insurance Company ("Washington") issued Claborn a health insurance policy. Claborn later informed Washington about his seizure disorder and Washington rescinded the contract. Id. at 1047. The case went to trial and the jury returned a verdict in favor of Claborn. The Oklahoma Supreme Court reversed, finding that there was evidence in the record that Claborn knew about his seizure disorder and acted with intent to deceive his insurer by failing to disclose that condition. The court found that the insurer met its burden of proof to "show not only that the statements were untrue, but also that the misrepresentations were either fraudulent, material to the risks or hazards assumed by the insurer, and in good faith, the insurer would not have issued the policy" if it had known all of the facts. Id. at 1049. The evidence did not merely create an inference that the insured intended to deceive the insurer, but there was affirmative proof establishing an intentional failure to disclose information on the application.

Scottsdale contends that the only reasonable inference for the Court to make is that the Tollivers intended to deceive it by omitting prior fire losses from their application; however, this case is not as clear cut as Hobbs or Claborn and there are genuine issues of material fact precluding summary judgment. Sandra Tolliver has submitted an affidavit stating that she informed her insurance agent about the prior losses and that the insurance agent neglected to include this information on the application form. She claims that she included the loss history on an application

13

for homeowners insurance for the same property, and that her agent was responsible for including the information on her application with Scottsdale. Salley denies the Tollivers' allegations that they informed him of the previous losses and states that they asked him to change his statement as part of a scheme to defraud Scottsdale. This is precisely the kind of factual dispute which precludes summary judgment, as the Court would have to weigh the credibility of the declarants in order to resolve it.

There is also a factual dispute about whether rental claims were material to the underwriter's decision to issue the policy. The underwriter, Bagwell, states that "commercial" losses, such as rental property claims, did not have to be disclosed and would not have affected her decision to issue the insurance policy. Scottsdale's in-house underwriter, Michelle Sangston, contends that all fire loss claims must be disclosed regardless of whether they occur in residential or commercial property. Sangston can not cite to a written policy, but states that her standard practice would be to consider rental and residential claims when underwriting a policy. Scottsdale argues that it would have rejected the Tollivers' application based on its underwriting guidelines, but the record shows a genuine issue of material fact on this issue. These genuine issues of material fact preclude summary judgment on the breach of contract claim and Scottsdale's declaratory judgment claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 46) is **granted in part** and **denied in part**; it is **granted** as to defendants' counterclaim for bad faith; it is **denied** as to defendants' counterclaim for breach of contract and Scottsdale's declaratory judgment claim.

**DATED** this 21st day of July, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14