**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04-CV-0227-CVE-FHM ) |
| MICHAEL S. TOLLIVER and SANDRA L. TOLLIVER, | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Now before the Court are Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. # 183) and Defendants' Motion for New Trial (Dkt. # 184). Defendants ask the Court to enter judgment as a matter of law, because the Scottsdale Insurance Company ("Scottsdale") agent, Vanessa Bagwell, did not rely on alleged misrepresentations in the insurance application when binding coverage and Scottsdale failed to prove Sandra Tolliver's intent to deceive by clear and convincing evidence. Defendants also request a new trial on the ground that the jury's rejection of their affirmative defense of waiver was against the weight of the evidence.

**I.**

Scottsdale filed this case on March 19, 2004 seeking a declaratory judgment that it had no obligation to pay a fire loss claim submitted by Sandra and Michael Tolliver, because the Tollivers allegedly misrepresented their loss history on their application for dwelling insurance. The Tollivers filed counterclaims for breach of contract and bad faith. Scottsdale filed a motion for summary judgment as to both of the Tollivers' counterclaims. The Court granted summary judgment in favor of Scottsdale on the Tollivers' bad faith counterclaim, but found that genuine issues of material fact

precluded summary judgment on their breach of contract counterclaim. Dkt. # 87. The case proceeded to trial and, on April 18, 2007, a jury found in favor of Scottsdale on its claim for cancellation of the insurance policy. The Tollivers appealed to the Tenth Circuit Court of Appeals. The Tenth Circuit reversed the jury verdict and remanded the case for a new trial, because the Court did not instruct the jury that Scottsdale had the burden to prove the Tollivers' intent to deceive by clear and convincing evidence. The Court set a new trial for May 19, 2008. The parties requested a continuance and the Court reset the trial date for September 17, 2008.

At the second trial, Scottsdale's first witness was Sandra Tolliver. She testified that she is a licensed attorney in the state of Oklahoma and her husband manages a business called Tolliver Properties. She stated that Tolliver Properties buys property or residences and refurbishes them for resale. Dkt. # 180, at 40. While Michael Tolliver is primarily responsible for repairing or restoring the properties, Sandra Tolliver testified that she is responsible for purchasing insurance on the properties owned by Tolliver Properties. Id. at 42-43. In 2002, the Tollivers purchased a house located at 1735 East 31st Street in Tulsa, Oklahoma ("the 31st Street property"). Sandra Tolliver testified that the Tollivers originally intended to move into the property as their primary residence, and they applied for homeowner's insurance on the property. Sandra Tolliver approached Everett Salley, an agent for Southwest General Insurance Agency, Inc., about purchasing a homeowner's policy on the property. The Tollivers initially applied for homeowner's insurance from Lloyd's of London. In the loss history section of the application, Sandra Tolliver stated that she had previously filed a $5,000 hail claim in 2001 and noted that the Tollivers "had some claims on rental properties that were not personal." Id. at 45. The Tollivers subsequently decided to rent the property and this required the Tollivers to acquire dwelling, rather than homeowner's, insurance on the 31st Street

2

property. In September 2002, Sandra Tolliver informed Salley of the change in circumstances and he prepared an application for a dwelling insurance with Scottsdale. Id. at 54. On the application to Scottsdale, Sandra Tolliver listed the $5,000 hail claim but did not reference any other claims. Id. at 55. Sandra Tolliver signed the application for dwelling insurance and Scottsdale issued the policy through Westphalen Insurance Services ("Westphalen"), an insurance broker for Scottsdale in Oklahoma.

On March 29, 2003, the 31st Street property burned down and the Tollivers submitted a total loss fire claim to Scottsdale. Dkt. # 108, at 2. Scottsdale investigated the claim and discovered that the loss history listed on the Tollivers' application was incomplete. In addition to a $5,000 hail claim, the Tollivers had filed the following fire and theft claims within three years of their application to Scottsdale:[1]

- October 14, 2000 -- $80,000 fire loss claim at 119 N. Missouri, Claremore Oklahoma;

- May 13, 2001 -- $70,000-$80,000 fire loss claim at 1208 South Indian, Tulsa, Oklahoma;

- December 28, 2001 -- $14,500 theft loss claim at 3218 East 37th Street, Tulsa Oklahoma

Dkt. # 180, at 39-40, 66-71. Sandra Tolliver testified that she informed Salley of the Tollivers' prior fire and theft losses, but Salley did not ask her for details. Id. at 50-51. She also stated that Salley filled out the application and she provided him all of the information he asked for during the

---

[1] This list does not include three hail claims referenced by Scottsdale at trial, because the trial transcript provides incomplete information about the dates, locations, and amounts of these claims. However, the Court notes that Scottsdale presented evidence of these hail claims at trial and they were not specifically disclosed on the Tollivers' application to Scottsdale.

3

application process. Id. at 51. At trial, Scottsdale's attorney asked Sandra Tolliver if she noticed the following language on the application directly above the signature line:

> I have read the above application and any attachments. I declare that the information provided in them is true, complete, and correct to the best of my knowledge and belief. This instrument is being offered to the company as an inducement to issue the policy for which I am applying.

Id. at 56. Although she admitted that she signed the Scottsdale application, she claims that she did not read the application before signing it and relied on Salley to fill the form out properly. Id. at 57. She testified that Scottsdale denied the Tollivers' fire loss claim in October 2003, because she allegedly misrepresented her loss history on the application. Id. at 72-73. Sandra and Michael Tolliver visited Salley after the denial and she testified the purpose of this meeting was to allow Salley to explain why Scottsdale was informed of one hail claim only. Id. at 73. She further testifed that she "never intended to deceive anyone" and she fully disclosed her loss history to Salley. Id. at 74.

Michael Tolliver testified about his role in Tolliver Properties and stated that his wife generally applied for insurance on the company's properties. Id. at 75-77. He had never met Salley before the application for a dwelling policy was submitted to Scottsdale and he did not sign the application. Id. at 77. He met Salley about six or seven months after the Tollivers filed a fire loss claim with Scottsdale. He did not know the purpose of the meeting but, during the meeting, he learned that his wife wanted additional information from Salley about the denial of the Tollivers' fire loss claim. Id. at 78. Michael Tolliver also testified about the fire at the 31st Street property. He testified that, on March 28, 2003, he went to the property after the tenant, Mr. Hill, notified him that Mr. Hill's daughter was having a party and the police had been called to the house. Id. at 81. After he stopped by the house, he met Mr. Hill at a restaurant called In the Raw and later met Mr.

4

Hill at a different restaurant called The Full Moon Cafe. Id. at 82-84. Early on the morning of March 29, 2003, Michael Tolliver received a phone call about the fire and drove over to the house to meet with the fire department. Id. at 84-85. He did not tell his wife about the fire until the next day. Id. at 85.

Salley testified about his recollection of the information provided by Sandra Tolliver before he prepared the Tollivers' application for dwelling insurance and his subsequent dealings with the Tollivers.[2] Sandra Tolliver was referred to Salley by Lloyd Watkins, an agent for Allstate Insurance Company, and Salley initially talked to Sandra Tolliver on the telephone. Dkt. # 200, Ex. D, at 2. Salley initially prepared an application for homeowner's insurance with Lloyd's of London, because Sandra Tolliver told him the Tollivers intended to use the house as their primary residence. Id. at 3. He asked Sandra Tolliver about her loss history, and she identified a single $5,000 hail claim. Id. at 2. Sandra Tolliver also informed Salley that she had "other small claims on rental properties." Id. Based on Sandra Tolliver's representations, he believed that she was referring to claims smaller than the hail claim. Id. at 2-3. He testified that Scottsdale made no distinction between rental and personal property claims when reviewing an application for dwelling insurance, and Sandra Tolliver should have disclosed all prior claims within the last three years. Id. at 3, 4. He stated that Sandra Tolliver did not mention any fire claims. Id. Sandra Tolliver requested a quote for dwelling insurance in September 2002, because the Tollivers were not living in the 31st Street property. Id.

---

[2]  Scottsdale presented Salley's testimony by video deposition, because Salley died between the first and second trials of this case. The parties agreed to waive reporting and transcription of his video testimony. Dkt. # 180, at 87. Scottsdale provided a transcript of the deposition as an exhibit to its response to defendants' motion for judgment as a matter of law, and the Court will cite to the deposition transcript in this Opinion and Order. See Dkt. # 200, Ex. D.

5

When preparing the Scottsdale application, Salley relied on the Lloyd's of London application to complete the loss history. Id. at 3.

Salley met with the Tollivers in the Fall of 2003 after the Tollivers' fire loss claim was denied by Scottsdale. Salley testified that Michael Tolliver acted surprised that Sandra Tolliver had not disclosed the Tollivers' complete loss history. Id. at 5. Salley believed that Michael Tolliver was "quite upset" that Sandra Tolliver had not communicated their entire loss history to Salley. Id. Salley also stated that "they were trying to get me to say that we had discussed the fire claims, which we hadn't." Id. He refused to add information to the Tolliver's file or make any statement that Sandra Tolliver had disclosed more information than what was listed on her application forms. Id.

Scottsdale next called Bagwell to testify about her approval of the Tollivers' application for dwelling insurance and the impact of Sandra Tollivers' omission of her complete loss history from her application. Bagwell works as a personal-lines underwriter for Westphalen. Dkt. # 181, at 17. As an personal-lines underwriter, Bagwell would receive quotes or applications from general underwriters, such as Salley, and try to place the insurance with an insurer that meets the applicant's needs. Id. at 20. In this case, Salley submitted a quote sheet before the application was completed, and the quote sheet listed a single hail claim in 2001 and a theft loss in 1998 for the Tollivers' loss history. Id. at 21-23. This loss history fell within Scottsdale' underwriting guidelines and Bagwell bound the coverage before seeing the Tollivers' application. Id. at 52. Bagwell later approved the Tollivers' application for dwelling insurance based on Sandra Tolliver's representation that she had a single hail claim within the last three years. Id. at 26. Bagwell also had access to the Tolliver's application for homeowner's insurance to Lloyd's of London and saw the reference to "claims on rental properties that were not personal." Id. This language suggested to Bagwell that the claims

6

were for commercial, rather than personal, rental property and were not relevant to the underwriting of the Tollivers' dwelling policy. Id. at 27. At trial, Bagwell reviewed the Tollivers' actual loss history and testified that she would have declined the quote and would not have underwritten the policy if the complete loss history had been provided. Id. at 28-30. The underwriting guidelines in effect in July 2002 required Bagwell to decline a quote or application if the insured had three losses within the past three years. Id. at 30.

On cross-examination, Bagwell acknowledged that she had access to the Lloyd's of London application when she reviewed the Tollivers' application for dwelling insurance with Scottsdale and did not conduct any further investigation into the Tollivers' loss history. Id. at 34. She also affirmed that she decided to bind coverage based on the Tollivers' quote sheet before seeing the Scottsdale application. Id. at 54. On redirect examination, Bagwell clarified that Scottsdale could cancel the insurance policy if it subsequently discovered a misrepresentation in the application, even if Bagwell initially bound coverage based on the information in the quote sheet. Id. at 59.

Scottsdale's next witness was Michelle Sangston, an underwriting specialist for Scottsdale. Sangston testified generally about the importance of an accurate loss history when underwriting an insurance policy. She reviewed the Tollivers' application for dwelling insurance and found that it fell within Scottsdale's underwriting guidelines at the time. Id. at 72. However, the Tollivers' application would have been denied if they disclosed their complete loss history. Id. at 74. Sangston's testimony completed Scottsdale's case-in-chief. Defendants moved for judgment as a matter of law on the grounds that Bagwell did not rely on the alleged misrepresentation in the application to bind coverage and that Scottsdale failed to prove by clear and convincing evidence that Sandra Tolliver acted with the intent to deceive. Id. at 79. The Court denied the motion on both

7

grounds. First, the Court found that Bagwell did not rely on the application to bind coverage, but Bagwell testified that she later reviewed the application when issuing the policy. Therefore, any misrepresentations in the Tollivers' loss history on the application were relevant to Bagwell's decision to issue the policy. The Court also found that Scottsdale's case-in-chief presented a "quintessential jury issue because we have conflicting testimony between Mr. Salley and Mrs. Tolliver, and it's a jury issue to decide whether or not there is clear and convincing evidence of intent to deceive." Id. at 80.

Defendants called Sandra Tolliver to testify about the circumstances leading up to the Tollivers' purchase of the 31st Street property and the process of obtaining insurance for the property. Sandra Tolliver testified that she approached Salley about applying for a homeowner's insurance policy for the 31st Street property. Id. at 85. She stated that she provided all of the information Salley requested and she authorized Salley to check her loss history. She testified that she had nothing to hide and believed the Salley would obtain a loss history report. Id. at 87. She stated that she was trusting Salley to fill out the application properly and she felt that she did not need to read the Scottsdale application before signing it. Id. at 90. Sandra Tolliver testified that she made two claims under the Scottsdale policy. First, she made a fire loss claim for the 31st Street property in April 2003. Id. at 101-02. Second, she filed a claim when a neighbor sued the Tollivers about damage to his property when kids from the March 28, 2003 party allegedly damaged his property. Id. at 102-03. Scottsdale denied the fire loss claim on October 30, 2003, but Sandra Tolliver testified that Scottsdale continued to defend the Tollivers until January 2005 in the property damage lawsuit. Id. at 103. She also testified about the Tollivers' meeting with Salley following the denial of the fire loss claim and described Salley's demeanor as "defensive." Id. at 106. She

denied that she or her husband tried to pressure Salley into changing the Tollivers' file to reflect that she had disclosed more losses than were listed on her applications for homeowner's or dwelling insurance. Id. at 107.

Defendants also presented the testimony of two Scottsdale employees, Christine Moyer and David Erickson, who handled the Tollivers' fire loss claim.[3] Moyer testified that she was responsible for handling the Tollivers' claim and Erickson was her manager. Dkt. # 183, Ex. 4, at 3. Moyer recommended to Erickson that Scottsdale should deny the Tollivers' fire loss claim based on misrepresentations in the application. She testified that she could not state whether Sandra Tolliver acted with the intent to deceive, because she had no knowledge of Sandra Tolliver's mental state. Id. at 3-4. She also testified that she was aware that the Tollivers had filed a separate claim arising out of a property damage suit with a neighbor, but the decision to approve or deny that claim resided with a separate part of the company. Id. at 2. Erickson testified that he approved Moyer's recommendation to deny the Tollivers' fire loss claim based on misrepresentations in the Tollivers' application. Id., Ex. 5, at 1. Erickson had no personal knowledge of Sandra Tolliver's mental state when she signed the application and could not say if she acted with the intent to deceive Scottsdale. Id.

This testimony ended defendants' case and they renewed their motion for judgment as a matter of law. The Court denied the motion for the same reasons. Following jury instructions and closing arguments, the case was submitted to the jury. The jury found in favor of Scottsdale on its

---

[3] Defendants presented the testimony of Moyer and Erickson by video deposition and the parties agreed to waive reporting and transcription of their testimony. Dkt. # 181, at 145. Defendants provided deposition transcripts as exhibits to their motion for judgment as a matter of law, and the Court will cite to the deposition transcripts in this Opinion and Order. See Dkt. # 183, Exs. 4, 5.

claim for cancellation of the insurance policy and did not reach the Tollivers' counterclaim for breach of contract. Dkt. # 178.

## II.

Defendants' motion for judgment as a matter of law is reviewed under Fed. R. Civ. P. 50, which provides that:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>> (A) resolve the issue against the party; and
>>
>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). With regard to a renewed motion for judgment as a matter of law, the Court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). The Court must construe the evidence and make all inferences in a light most favorable to the non-moving party. Doan v. Seagate Technology, Inc., 82 F.3d 974, 976 (10th Cir. 1996). The Court does not "'weigh the evidence, pass on the credibility of witnesses, or substitute [its] conclusions for that of the jury. However, [it] must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim . . . under the controlling law.'" Yearous v. Niobrara County Mem'l Hospital, 128 F.3d 1351, 1353 (10th Cir. 1997) (quoting Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997)). Judgment notwithstanding the verdict "should be cautiously and sparingly granted." Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1400 (10th Cir. 1988).

Defendants' motion for new trial pursuant to Fed. R. Civ. P. 59(a) is governed by a different standard.  Pursuant to Rule 59, a court may grant a new trial "on all or some of the issues--and to any party-- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  When a party requests a new trial on the basis that the jury's verdict was contrary to the weight of the evidence, a court must consider whether the jury's verdict was "clearly, decidedly or overwhelmingly against the weight of the evidence."  Black v. Hieb's Enterprises, Inc., 805 F.2d 360, 363 (10th Cir. 1986).  A court must also view the evidence in a light most favorable to the non-moving party.  Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999).

### III.

In their motion for judgment as a matter of law, defendants argue that Bagwell did not rely on any misrepresentations in the Scottsdale application when binding coverage and Scottsdale failed to prove Sandra Tolliver's intent to deceive by clear and convincing evidence.  In their motion for a new trial, defendants argue that the jury's failure to return a verdict in favor of defendants based on their defense of waiver was against the weight of the evidence.

### A.

Defendants renew their motion for judgment as a matter of law based on two issues that were specifically raised in a Rule 50 motion during trial and the motion is properly before the Court. First, defendants argue that any misrepresentations in the application are irrelevant, because Bagwell made the decision to bind coverage without reference to defendants' application.  Second, defendants argue that Scottsdale did not carry its burden to prove defendants' intent to deceive by clear and convincing evidence.

11

Defendants' first argument does not entitle them to a judgment in their favor, because Bagwell's decision to bind coverage did not later preclude Scottsdale from cancelling the policy based on misrepresentations in the Tollivers' application. Defendants focus on a narrow aspect of Bagwell's testimony and fail to address Bagwell's complete trial testimony, which is fatal to their argument. Bagwell testified at trial that she bound coverage for the Tollivers based on a quote sheet, and she had not seen the application when she bound coverage. Dkt. # 181, at 149-50. Bagwell also testified that a policy is not issued until she receives the application from the insured and a binder is a temporary method to provide coverage to the insured before the application is received and processed. Id. at 156. She clearly stated that she would not have bound coverage for the Tollivers if their complete loss history had been disclosed on the quote sheet. Id. In this case, the loss history provided by the quote sheet and the application were identical and Bagwell issued the policy based on her determination that the Tollivers' loss history fell within Scottsdale's underwriting guidelines. Even if an insurer agrees to provide temporary coverage, this does not prevent the insurer from declining an application for insurance if the applicant has made a material misrepresentation to obtain temporary coverage. BancOklalama Mortgage Corp. v. Hysell, 925 P.2d 563, 566 (Okla. Civ. App. 1996) (insurer not bound to issue insurance policy when the applicant materially misrepresented his medical history to obtain temporary coverage). The evidence at trial established that the loss history in the Tollivers' application disclosed only a single hail claim, and the Tollivers omitted three fire claims, a theft claim, and other hail claims from the Scottsdale application. Although Bagwell did not rely on the application to bind coverage, this does not make omissions from the application irrelevant to Scottsdale's claim. The jury could have credited Bagwell's testimony that omission of relevant loss history altered Bagwell's decision to bind coverage and

12

eventually issue an insurance policy to the Tollivers on behalf of Scottsdale, and the decision to bind coverage did not result in a waiver of Scottsdale's right to deny a claim based on misrepresentations in the application.

Defendants also argue that Scottsdale did not prove by clear and convincing evidence that Sandra Tolliver intended to deceive Scottsdale when she omitted much of her previous loss history from her application. They argue that there is no direct evidence that Sandra Tolliver intended to defraud Scottsdale, because Sandra Tolliver "(1) relied on her agent to fill out the application; (2) gave her agent permission to obtain a loss history report detailing her loss history; (3) believed that her agent would obtain her loss history; and (4) did not read the application before she signed it." Dkt. # 183. Defendants claim that Bagwell had actual knowledge that the Tollivers had suffered other losses on rental property and failed to investigate, and Scottsdale should have been on notice of the Tollivers' complete loss history when it issued the Tollivers' dwelling policy. They argue that Bagwell's failure to conduct an investigation, when she knew of facts suggesting that the Tollivers had suffered other losses, prevents Scottsdale from cancelling the policy due to a misrepresentation in the application. At trial, Sandra Tolliver denied that she intentionally misrepresented her loss history and testified that she told Salley about her entire loss history. Dkt. # 180, at 47; Dkt. # 181, at 91, 113. She testified that she did not read the application before signing it, because she relied on Salley to complete the application properly.[4]  Dkt. # 180, at 51; Dkt. # 181, at 90.

---

[4] At defendants' request, the Court gave a jury instruction that Salley was defendants' agent, and any acts by Salley within the scope of his duties were attributable to defendants. Dkt. # 177, at 31. Therefore, even if Sandra Tolliver relied on Salley and he omitted loss history from the application, the omission is attributable to defendants. The Court will consider Sandra Tolliver's testimony on this issue as it relates to her intent to deceive, but the omission of information from the application should still be treated as an act of defendants.

Scottsdale responds that it was not required to present direct evidence of defendants' intent to deceive and it produced sufficient circumstantial evidence to prove this element of its cancellation claim by clear and convincing evidence. Scottsdale argues that the undisputed evidence shows that Sandra Tolliver disclosed a single $5,000 hail claim on her application for dwelling insurance and, even though she made a vague reference to other "claims on rental properties that were not personal" on another application, she did not actually disclose her prior fire or theft claims to Scottsdale. Salley testified that Sandra Tolliver did not inform him of any claims other than the $5,000 hail claim, and he interpreted Sandra Tolliver's reference to other rental claims to mean that her other claims were less than the $5,000 hail claim. He also testified about a meeting with Sandra and Michael Tolliver wherein they allegedly asked him to supplement the Tollivers' file with evidence that Sandra Tolliver had disclosed the prior fire claims. Dkt. # 200, Ex. D, at 5. Scottsdale argues that the jury could have rejected Sandra Tolliver's testimony and concluded that she intentionally omitted her loss history from the Scottsdale application.

Considering all of the evidence presented at trial and making all inferences in favor of the non-moving party, the Court finds that Scottsdale presented sufficient evidence for the jury to find by clear and convincing evidence that Sandra Tolliver intended to deceive Scottsdale by misrepresenting her loss history. Defendants' argument is based on the assumption that the Court will treat Sandra Tolliver's testimony as true. However, this Court must make all inferences in favor of Scottsdale, the non-moving party. It was the jury's role to determine witness credibility and, if the jury did not find Sandra Tolliver to be a credible witness, this Court may not usurp the jury's function when ruling on a post-judgment motion. The jury was presented with the testimony of two witnesses with different stories, Sandra Tolliver and Everett Salley, and the jury's decision on

witness credibility controlled their verdict. Based upon the testimony of Salley, the jury could have found that Sandra Tolliver did not disclose her loss history and attempted to coerce Salley into placing false or misleading evidence in her file. Sandra Tolliver's testimony that she relied on her insurance agent and that she did not read the application could also be construed as an attempt to intentionally disassociate herself from any omissions in the application, and this evidence could be viewed in a light favorable to Scottsdale. If the jury found Salley's testimony credible and did not believe Sandra Tolliver's testimony, there is sufficient evidence to support the jury's finding that defendants intended to deceive Scottsdale, and for the jury this evidence could meet the instructed definition of clear and convincing evidence. Therefore, defendants' renewed motion for judgment as a matter of law should be denied.

**B.**

Defendants' motion for new trial is premised on their contention that the jury's rejection of their waiver defense was against the weight of the evidence. Scottsdale responds that a third trial of this matter is unnecessary because, in two previous trials, defendants have raised this argument and the jury has rejected it both times.[5]

Defendants argue that Scottsdale waived its right to cancel the policy based on a misrepresentation in the application, because Scottsdale actively defended the Tollivers in a separate

---

[5]  Scottsdale argues that defendants waived post-trial review of their affirmative defense by failing to raise this issue in a motion for judgment as a matter of law during trial and cites Green Construction Co. v. The Kansas Power and Light Co., 1 F.3d 1005 (10th Cir. 1993). Dkt. # 201, at 3. The Tenth Circuit does permit a party to raise an argument that the jury's verdict was against the weight of the evidence in a Rule 59(a) motion for new trial. Anaeme, 164 F.3d at 1284; Blanke v. Alexander, 152 F.3d 1224 (10th Cir. 1998). However, the jury's verdict should be overturned only if "it is clearly, decidedly, or overwhelmingly against the weight of the evidence." Anaeme, 164 F.3d at 1284 (quoting York v. American Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996)).

property damage case without reserving its right to deny coverage. The Tollivers filed their fire loss claim in April 2003 and Scottsdale began defending the Tollivers in the property damage case in May 2003. Dkt. # 181, at 199-200. Scottsdale denied the Tollivers' fire loss claim on October 30, 2003, but continued to defend the Tollivers in the property damage case until January 2005. Id. at 200-01. Defendants claim that "slight" evidence of waiver is all that is necessary for them to prevail on their defense of waiver. Dkt. # 184, at 5. They argue that the undisputed evidence presented at trial shows that Scottsdale continued to defend the Tollivers long after it denied the Tollivers' fire loss claim, and this implicitly constituted an intentional waiver of Scottsdale's right to cancel the policy.

The defense of waiver under Oklahoma law is available only when the opposing party voluntarily and intentionally relinquishes a known right, and a waiver may express or implicit. Barringer v. Baptist Healthcare of Oklahoma, 22 P.3d 695, 700-01 (Okla. 2001); Continental Ins. Co. of New York v. Portwood, 84 P.2d 435, 438 (Okla. 1938). "The doctrine is essentially a matter of intention, focusing on the intent of the party against whom the waiver is asserted." Barringer, 22 P.3d at 701. In cases involving an implied waiver, "there must be a clear, unequivocal and decisive manifestation of the party's relinquishment of the right." Id. In an insurance coverage dispute, the insured bears the burden of proof on his affirmative defense that an insurer waived the right to deny coverage under an insurance policy. Globe & Rutgers Fire Ins. Co. v. Roysden, 258 P.2d 644 (Okla. 1953). However, this burden may be lessened if the insurer has led the insured to believe that a particular risk is covered under a policy and a court finds that the "equities are in favor of the insured." Security Ins. Co. of New Haven v. Greer, 437 P.2d 243, 246 (Okla. 1968).

Considering the evidence in a light most favorable to Scottsdale, the Court finds that defendants' motion for a new trial should be denied. In this case, equity does not favor defendants and the Court will not reduce their burden to prove that Scottsdale voluntarily and intentionally relinquished its right to cancel the policy. The jury found by clear and convincing evidence that Sandra Tolliver acted with the intent to deceive and, unlike <u>Greer</u>, this is not a case where an innocent insured was led to believe that his insurer agreed to accept a known risk when issuing an insurance policy. The evidence shows that Scottsdale agreed to defend the Tollivers in the property damage case at least five months before it denied the fire loss claim. Defendants have not shown that Scottsdale was aware of misrepresentations in the application when Scottsdale received notice of the property damage case, and it very likely would have been a breach of contract or bad faith for Scottsdale to deny, reserve its right to deny, or refuse to defend any claim arising out of the property damage case. Defendants argue that Scottsdale was aware of the property damage case when it denied the Tollivers' fire loss claim, because Moyer testified that she knew of both claims. They argue that Scottsdale waived its right to cancel the policy, because Scottsdale continued to defend the Tollivers in the property damage case. However, Moyer testified that she had no authority to take any action on a claim in a separate department and the property damage case was outside of her duties as a Scottsdale employee. Dkt. # 184, Ex. 4, at 2. Defendants' waiver defense is based on the fact that Scottsdale continued to defend the property damage case after denying the fire loss claim but, without more, this is not evidence that Scottsdale voluntarily and intentionally waived its right to cancel the policy due to Sandra Tolliver's omission of relevant loss history. Making all inferences in favor of Scottsdale and considering that the Tollivers bore the burden of proof on their

17

affirmative defense, the jury's decision to reject the Tollivers' waiver defense was not against the weight of the evidence.

**IT IS THEREFORE ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. # 183) and Defendants' Motion for New Trial (Dkt. # 184) are **denied**.

**DATED** this 8th day of December, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT