IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SCOTTSDALE INSURANCE COMPANY, )
)
    Plaintiff, )
)
vs. ) Case No. 04-cv-0227-CVE-FHM
)
MICHAEL S. TOLLIVER, and )
SANDRA L. TOLLIVER, )
)
    Defendants. )

## **REPORT AND RECOMMENDATION**

Before the undersigned for a report and recommendation are the Motions for Writs of Execution (dkt. ## 257, 258) and the Amended Motion for Writ of Execution (dkt. # 274) of plaintiff Scottsdale Insurance Company. Defendant Sandra L. Tolliver ("S. Tolliver") filed a response and objection. (Dkt # 262). Defendant Michael S. Tolliver ("M. Tolliver") did not file a response. Collectively, plaintiff's motions ask the Court to issue writs of execution with respect to property held by two limited liability companies, SLT Properties, LLC ("SLT") and MST Properties, LLC ("MST") (collectively, the "LLCs"). S. Tolliver has a fifty percent (50%) interest in both LLCs; M. Tolliver has the remaining fifty percent (50%) interest in the LLCs.

On October 19, 2011, the undersigned conducted a hearing to consider plaintiff's initial Motions for Writs of Execution. (Dkt. # 264). In S. Tolliver's written response, and during the hearing, she argued that plaintiff's motions could not be granted, because property held by the LLCs was at issue, and the LLCs had not been provided notice and an opportunity to be heard. (Dkt. # 262; October 19, 2011 Hearing Recording). To cure this alleged defect, the undersigned recessed the hearing until October 26, and the undersigned ordered counsel for defendants to provide the LLCs notice of the motions and the hearing. (Dkt. # 264). Both defendants and the

1

LLCs (through counsel) were present at the October 26 hearing, when the undersigned heard evidence and argument. (Dkt. # 268). On November 2, 2011, plaintiff filed a Motion to Join Parties, seeking the joinder of the LLCs. (Dkt. # 271). There was no objection filed to the motion, and on November 28, 2011, the undersigned granted plaintiff's request to join the LLCs as additional defendants. (Dkt. # 273). On December 16, 2011, plaintiff and S. Tolliver submitted proposed findings of fact and conclusions of law. (Dkt. ## 275, 278). On January 6, 2012, SLT and MST filed corporate disclosure statements. (Dkt. ## 285, 286).

The issue before the court is whether plaintiff can execute on real and personal property held by SLT and MST in order to satisfy the judgment entered in favor of plaintiff in this case.

## **Factual Background and Findings**

On September 29, 2009, judgment was entered in favor of plaintiff and against defendants in the amount of $140,000.00, plus post-judgment interest at the rate of .41% per annum from September 29, 2009. (Dkt. # 243). The judgment is now a final, non-appealable Order. (Dkt. #275 ¶ 1). On or about February 12, 2010, defendants caused SLT and MST to be formed as Oklahoma limited liability companies under applicable Oklahoma law. (October 26, 2011 Hearing Recording). The LLCs are operating in good standing under the laws of the State of Oklahoma. (Dkt. # 275 ¶ 2).

At formation, defendants each contributed $500.00 to MST and received units in MST. (Dkt # 278-2 at 2, 9). Neither defendant was "obligated to make any additional contribution" to MST. (MST Operating Agreement, Dkt. # 278-2 at 2). Nonetheless, between February 16, 2010 and March 12, 2010, defendants transferred approximately fourteen (14) parcels of real property (dkt. # 278, Exs. 4-16) and the following securities to MST: $24,794.16 of Exxon Mobile Corporation stock; $7,409.89 of Bank of America Corporation stock; and $130,028.50 of BP,

PLC stock (collectively, the "MST Transfers"). (October 26, 2011 Hearing Recording; Dkt. # 278, Exs. 3, 17, 18). S. Tolliver testified that in return for these property transfers, defendants received their ownership interests in the LLCs. (October 26, 2011 Hearing Recording). The MST Operating Agreement unequivocally contradicts this testimony. (Dkt. # 278-2 at 2). As set forth above, defendants received their ownership interest in MST in return for a capital contribution of $500.00 each, and neither defendant was obligated to make any future contribution to MST. Thus, defendants received no consideration for the MST transfers. (October 26, 2011 Hearing Recording).

Neither party presented to the undersigned the SLT Operating Agreement; however, S. Tolliver claimed that in return for defendants' interest in SLT, she and M. Tolliver contributed real property to SLT (the "SLT transfer"), the same representation she made with respect to MST. (October 26, 2011 Hearing Recording). As discussed above, that representation was untrue. Based on the undersigned's observations of S. Tolliver during her testimony, and in light of her testimony regarding the MST transfers, the undersigned finds that S. Tolliver's testimony lacks credibility. Thus, there is no credible evidence that defendants received any consideration for the SLT transfer.

S. Tolliver testified that the LLCs were established and funded for tax reasons on the advice of defendants' CPA, but she did not identify the "tax reasons," and defendants' CPA did not testify. Id. Alternatively, in defendants' discovery responses, they claimed to have made the transfers "[t]o have "liquid asset[s] as capital contribution available to pay for repair, remodeling or maintenance work on the LLC's properties or pay the on-going obligations, such as mortgage payments, insurance and property taxes, if needed. To provide additional income to the LLC from dividends." (Dkt. # 278-3 at 3). These explanations lack credibility. Nothing in the MST

3

Operating Agreement limits the timing or amount of future contribution by defendants, so defendants were free to make additional capital contributions at any time, if such contributions were needed. Likewise, there is no evidence that contributions to SLT are limited in any way. There are simply no facts indicating that the contributions made by defendants to either MST or SLT were required for the purposes identified by defendants, either when those contributions were made or at any time since.

Based on the foregoing, the evidence establishes that defendants transferred, for no legitimate, identifiable reason, substantial assets to the LLCs after becoming subject to the judgment in this case.

## **Analysis**

Oklahoma's Uniform Fraudulent Transfer Act, Okla. Stat. tit. 24, § 112 *et. seq.* (the "Act") provides that a court may execute on property transferred from a debtor to a third party if the property is transferred with the intent to hinder, delay and/or defraud a judgment creditor. Okla. Stat. tit. 24, § 119 ("If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."). Section 116 of the Act identifies several factors that may be considered, among others, in determining whether a transfer was made with the intent to hinder, delay, and/or defraud a creditor:

1. the transfer or obligation was to an insider;
2. the debtor retained possession or control of the property transferred after the transfer;
3. the transfer or obligation was disclosed or concealed;
4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. the transfer was of substantially all the debtor's assets;

4

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Okla. Stat. tit. 24, § 116(B.). In examining fraudulent transfers, courts have noted that although the presence of a single factor may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud. See Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir. 1991).

Here, the transfers by defendants satisfy several of the factors enumerated in Oklahoma's fraudulent transfer statute:[1]

1. The MLT and SLT transfers were made to insiders. See Okla. Stat. tit. 24, § 116(B)(1). Defendants are the managers and the only members of the LLCs.

2. Defendants retained possession or control over all of the assets transferred to the LLCs. See Okla. Stat. tit. 24, § 116(B)(2). As the managers and only members of the LLCs, defendants continue to control, manage, and exercise exclusive authority over decisions relating to the transferred assets.

---

[1] Fraudulent intent, by its very nature, is rarely susceptible to direct proof. A defendant rarely will acknowledge that she transferred funds to place them beyond the reach of creditors. Actual intent often must be established through inferential reasoning, deduced from the circumstances surrounding the allegedly fraudulent act. Id. at 1254.

3. Defendants transferred the assets to the LLCs only after they had been sued by plaintiff and plaintiff had obtained a judgment against defendants. See Okla. Stat. tit. 24, § 116(B)(4).

4. Defendants did not receive consideration, or equivalent value, from the limited liability companies in exchange for the transfer of the assets in question. See Okla. Stat. tit. 24, § 116(B)(8).

5. Defendants transferred the assets in question shortly after they incurred a substantial debt. See Okla. Stat. tit. 24, § 116(B)(9). Defendants transferred the assets to the LLCs between six (6) and nine (9) months after plaintiff obtained the judgment and while defendants' appeal was pending.

In addition, the effect of the transfers by defendants was to place the transferred assets beyond the reach of plaintiff's effort to satisfy the judgment. Under Oklahoma's limited liability company statutes, the exclusive remedy of a creditor of a member in a limited liability company with respect to the member's interest is a "charging order," which may not be foreclosed upon. Okla. Stat. tit. 18, § 2034. Because defendants are the managers of MST and SLT, they can prevent the LLCs from distributing any cash or property which would be subject to a charging order and thereby hinder or delay plaintiff's collection efforts indefinitely. The purpose of statutes such as the Act is to prevent debtors from deliberately cheating a creditor by removing property from "the jaws of execution." See, e.g., Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475, 732 A.2d 482, 488, 23 Employee Benefits Cas. 1382, 1999 WL 387164 (1999). Additionally, when a conveyance of assets by a judgment debtor comes after suit is filed, when judgment is imminent, or after judgment, and where transfers are made to corporations wholly owned by judgment debtors, the evidence of fraudulent intent is strong. See City of Arkansas

City v. Anderson, 243 Kan. 627, 762 P.2d 183, 1988 WL 102417 (1988). A transferor's retention of all or some of his property, or his retention of the possession, benefit, or use of his property after a conveyance or transfer of real or personal property, assets, property of a business, estate interest, or an absolute sale, is also an indication of an intent to defraud. 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 36.

Here, the evidence clearly and convincingly establishes that the MST transfers and the SLT transfer were made for no legitimate purpose. In fact, the evidence establishes that the LLCs were created solely for the purpose of shielding defendants' assets from plaintiff's effort to collect on the judgment. Defendants continue to exercise control of the transferred assets, the only real distinction being that the assets sit outside the reach of defendants' creditors. The evidence is clear and convincing that defendants effected the MST and SLT transfers with the actual intent to hinder, delay or defraud plaintiff, as a judgment creditor. Therefore, the undersigned recommends that the Court grant plaintiff's motions and issue the requested writs of execution pursuant to Okla. Stat. tit. 24, § 119(B).

Finally, defendants argue that MST and SLT have not been served with any judicial process, have not voluntarily submitted to the jurisdiction of the Court, and are not parties to this action and, therefore, their assets are not subject to execution. Defendants are incorrect. In S. Tolliver's response to plaintiff's initial motions for writs, she argued: "Because the property in question is held by MST Properties, LLC, that entity is entitled to notice and an opportunity to be heard before the property held by it is seized." (Dkt. # 262). Based on this argument, the undersigned instructed defendants' counsel that "the LLCs will need to have counsel appear at the [October 26, 2011] hearing." (Dkt. # 264). The LLCs were represented at the October 26 hearing by Sam Bratton, and Mr. Bratton and defendants, on behalf of the LLCs, agreed to an

7

order by the undersigned "that no further encumbrances be placed on the property [of] the LLCs, and no transfer of assets from the LLCs [would occur] absent further order." (Dkt. # 268). Thus, the LLCs had notice of plaintiff's motions, and they voluntarily submitted to the jurisdiction of this Court. Thereafter, plaintiff filed a Motion to Join Parties, seeking "an Order granting joining SLT Properties, LLC, and MST Properties, LLC, as party defendants in this action. . .." Defendants, the only members of the LLCs, received service of this motion. No objection to plaintiff's motion was filed, and the undersigned granted the motion twenty-eight days later and ordered plaintiff to serve the LLCs, including copies of the order, immediately. (Dkt. # 273). Moreover, on January 6, 2012, the LLCs filed corporate disclosure statements in this action.

There is no doubt that the LLCs have been provided notice of plaintiff's motions and that they have been provided an opportunity to be heard. In fact, at no time have the LLCs objected to plaintiff's motions or objected to the undersigned's order joining them as parties. This argument has no merit.

**Recommendation**

Based on the foregoing, the undersigned RECOMMENDS that plaintiff's Motions for Writs of Execution and Amended Motion for Writ of Execution be GRANTED.

**OBJECTION**

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 25, 2012.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to:

> determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 11th day of January, 2012.

_____
T. Lane Wilson
United States Magistrate Judge