# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04-CV-0227-CVE-FHM |
| MICHAEL S. TOLLIVER, SANDRA L. TOLLIVER, SLT PROPERTIES, LLC, and MST PROPERTIES, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 287) recommending that the Court grant plaintiff Scottsdale Insurance Company's (Scottsdale) motions for writ of execution (Dkt. ## 257, 258) and amended motion for writ of execution (Dkt. # 274). Scottsdale seeks to execute on securities and real property transferred to SLT Properties, LLC (SLT) and MST Properties, LLC (MST) (collectively referred to as the LLCs) by defendants, and argues that the transfers were made in violation of the Uniform Fraudulent Transfer Act, codified in Oklahoma as OKLA. STAT. tit. 24, §§ 112-123 (the Act). The LLCs and defendants object to the magistrate judge's report and recommendation on the grounds that the LLCs were denied due process and that Scottsdale has failed to prove by clear and convincing evidence that the transfers were fraudulent.[1]

---

[1] Plaintiff has filed responses to the objections, but Fed. R. Civ. P. 72(b) does not authorize the objecting party to file a reply. Thus, the report and recommendation is ripe for review.

**I.**

Scottsdale issued a homeowner's insurance policy to Sandra and Michael Tolliver for a house located at 1735 East 31st Street in Tulsa, Oklahoma. However, the Tollivers failed to list all of their prior losses on their application and, in particular, they did not advise Scottsdale that they had suffered at least three prior fire losses within the relevant time period. The insured property was destroyed in a fire and the Tollivers submitted a claim under the insurance policy. On March 19, 2004, Scottsdale filed this case alleging that the Tollivers omitted material information on their application for homeowner's insurance, and Scottsdale sought a declaratory judgment that it was not obligated to pay the insurance claim submitted by the Tollivers. Dkt. # 1. The case went to trial and a jury found in favor of Scottsdale. Dkt. # 125. The Tollivers appealed the judgment to the Tenth Circuit Court of Appeals, and the case was remanded for a new trial. Scottsdale prevailed at the second trial as well. In reaching this verdict, the jury necessarily found by clear and convincing evidence that the Tollivers acted with intent to deceive when they misrepresented their loss history. See Dkt. # 177, at 19 (jury instruction setting forth elements of plaintiff's claim). The Tollivers appealed the judgment and it was upheld on appeal. Dkt. # 240.

Scottsdale requested attorney fees in the amount of $163,330 after the second trial, and the matter was referred to Magistrate Judge Frank H. McCarthy. Magistrate Judge McCarthy entered a partial report and recommendation (Dkt. # 227) as to the basis to award Scottsdale attorney fees, and he recommended that Scottsdale's motion for attorney fees be granted. The parties agreed that Scottsdale should be awarded fees of $140,000. Dkt. # 235. The magistrate judge entered a final report and recommendation that Scottsdale be awarded attorney fees in the agreed upon amount. Dkt. # 236. The Tollivers objected to the final report and recommendation and argued that

Scottsdale was not entitled to recover any attorney fees. The Court overruled the Tollivers' objections and entered judgment as to attorney fees in favor of Scottsdale in the amount of $140,000. Dkt. ## 242, 243. On October 27, 2009, the Tollivers appealed the judgment for attorney fees. On February 24, 2011, the judgment for attorney fees was affirmed by the Tenth Circuit. Dkt. # 249.

Scottsdale requested an asset hearing and Magistrate Judge T. Lane Wilson held an asset hearing on August 17, 2011. Dkt. # 256. Scottsdale learned during or shortly after the hearing that Sandra Tolliver transferred parcels of real property to SLT on March 12, 2010. Dkt. # 257, at 2-3. SLT is a limited liability company formed under Oklahoma law, and Michael and Sandra Tolliver each have a fifty percent interest in SLT. Scottsdale claims that the transfer of property to SLT was a fraudulent transfer in violation of the Act, and it requested a writ of execution on the property and an order of sale to satisfy Scottsdale's judgment. Id. at 5. Scottsdale also discovered that the Tollivers transferred securities and other real property to MST in February and March 2010, and Michael and Sandra Tolliver each have a fifty percent interest in MST. Dkt. # 258. Scottsdale alleges that the circumstances of the transfer show that the Tollivers were attempting to shield assets from possible execution by Scottsdale on its judgment for attorney fees. Scottsdale attached to its original motions for writ of execution the general warranty deeds transferring real property and securities from the Tollivers to the LLCs and the operating agreement for MST. See Dkt. ## 257, 258.

Scottsdale's motions for writs of execution were referred to Magistrate Judge Wilson, and he set the motions for hearing on October 19, 2011. Dkt. # 263. Sandra and Michael Tolliver appeared at the hearing represented by counsel, but their attorney stated that he did not represent the LLCs. The magistrate judge advised the Tollivers that the LLCs would be required to obtain their

own attorney, and he reset the hearing for October 26, 2011. Dkt. # 264. On October 26, 2011, defendants and the LLCs appeared and all were represented by counsel.[2] Defendants objected to proceeding with the hearing on the ground that the LLCs had not been served, and the magistrate judge noted defendants' objection. Dkt. # 292, at 5. Sandra Tolliver was the only witness to testify at the hearing. She claims that the purpose of forming the LLCs was to "put together the properties, the investment properties, so that income and expenses from more than one is in one entity for tax benefits." Id. Sandra and Michael Tolliver owned all assets transferred into the LLCs, and the LLCs had no assets or value prior to the transfers. The Tollivers received no consideration from the LLCs for transferring property other than membership in the LLCs. Id. at 6. Certain assets were sold or refinanced by MST to pay Michael Tolliver's criminal forfeiture penalty in his criminal case, but the Tollivers did not receive any assets from the transactions. Id. at 9-10. Sandra Tolliver testified that the value of the stocks held by MST is approximately $140,000, and the stocks are not pledged to any creditor. Id. at 11-12. Counsel for plaintiff explained that it was necessary to execute on the property in the LLCs, because a charging order against defendants would not give plaintiff access to the property held by the LLCs. The charging order would simply permit plaintiff to execute against defendants if they actually removed property from the LLCs, but defendants would not be able to execute on property while it remained in the control of the LLCs. Id. at 7.

---

[2]  The Court notes that Michael Tolliver was represented by Stanley Monroe at the motion hearing. Monroe is Michael Tolliver's attorney in a criminal case in the United States District Court for the Northern District of Oklahoma, and Michael Tolliver has been convicted of using fire or explosives to commit mail fraud and arson. United States of America v. Michael Sherman Tolliver, 10-CR-141-JHP (N.D. Okla.). Counts seven and eight specifically dealt with the Tollivers' insurance claim with Scottsdale, and the government alleged that Michael Tolliver committed arson and submitted a fraudulent insurance claim. Id., Dkt. # 36, at 3. The jury found Micheal Tolliver guilty on counts seven and eight.

4

Counsel for the LLCs argued that the LLCs had been denied due process, because the LLCs had not been served and they were not parties to the case. Id. at 19. The LLCs acknowledged that the owners of the LLCs were parties and had received complete due process, but they argued that third parties with interests in or debts related to the LLCs would be harmed unless Scottsdale was required to bring a separate lawsuit against the LLCs to execute on the LLCs' property. Id. at 21. Scottsdale responded that third parties would receive no notice even it brought a separate lawsuit against the LLCs, and this argument was not a legitimate basis to prevent it from executing on property held by the LLCs. Id. at 22. The parties did not present any evidence concerning the Tollivers' financial status after transferring property to the LLCs.

Scottsdale issued written discovery requests to the Tollivers after the hearing, asking the Tollivers to "[d]escribe with specificity each and every reason why you transferred securities owned by you to [MST]." Dkt. # 278-3, at 1. The Tollivers responded that they transferred securities to MST to "have liquid asset [sic] as capital contribution available to pay for the repair, remodeling or maintenance work on the LLC's properties or pay the on-going obligations, such as mortgage payments, insurance and property taxes, if needed. To provide additional income to the LLC from dividends." Id. at 1-2. Scottsdale also filed a motion to join SLT and MST as defendants. The magistrate judge granted the motion, and Scottsdale served the magistrate judge's order on SLT and MST. Dkt. # 273. Scottsdale filed its amended motion for writ of execution (Dkt. # 274) with all previously attached exhibits, and served the amended motion on SLT and MST. SLT and MST filed a response to the amended motion and stated:

> 1. The LLCs admit this Court has jurisdiction over the subject matter of this case. The LLCs were served with a file-stamped copy of Plaintiff's Application on or about December 14, 2011, through their undersigned counsel. Although no summons or other process was issued or served upon the LLCs, by the filing of this

5

> response the LLCs enter an appearance herein and by virtue thereof this Court has
> *in personam* jurisdiction over the LLCs.

Dkt. # 283, at 1. The LLCs admit that they are wholly owned and controlled by the Tollivers and the transfers of securities and real property to the LLCs occurred after entry of the judgment for attorney fees. Id. at 2.

The magistrate judge entered a report and recommendation on Scottsdale's original and amended motions for writ of execution. He considered the evidence attached to the motions and the testimony of Sandra Tolliver, and stated that her explanations for forming the LLCs were not credible. Dkt. # 287, at 3-4. There was no evidence that the Tollivers received any consideration for transferring property to the LLCs, and the alleged tax reasons for creating the LLCs were vague and unsubstantiated. Id. at 3. He also noted that Sandra Tolliver's reason for creating the LLCs stated at the motion hearing conflicted with the Tollivers' discovery responses, and both explanations lacked credibility. Id. at 3-4. He stated that the "evidence establishes that defendants transferred, for no legitimate, identifiable reason, substantial assets to the LLCs after becoming subject to the judgment in this case." Id. at 4. The magistrate judge considered the factors provided by OKLA. STAT. tit. 24, § 116 to determine whether transfers of property to the LLCs were fraudulent under the Act, and he stated that several factors strongly supported Scottsdale's argument that the transfers were fraudulent. Id. at 5-6. In particular, he stated that the Tollivers retained control of property transferred to SLT and MST because they were the only members of the LLCs, and the transfers were made to insiders within the meaning of the Act. Id. at 5. The timing of the transfers suggested that the Tollivers acted with fraudulent intent and the effect of the transfers was to place the transferred property "beyond the reach of plaintiff's effort to satisfy the judgment." Id. at 6. The magistrate judge also rejected the LLCs' argument that they had been denied procedural due process,

because the LLCs clearly had notice of Scottsdale's motions for writ of execution and had an opportunity to make oral and written objections to Scottsdale's request to set aside the transfers to the LLCs. Id. at 8. The Tollivers and the LLCs have filed objections to the magistrate judge's report and recommendation.

## II.

Without consent of the parties, the Court may refer any matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## III.

The Tollivers argue that the magistrate judge should have considered only evidence that was presented at the motion hearing on October 26, 2011. Dkt. # 291, at 3. They also object to the magistrate judge's application of the Act, and argue that Scottsdale has not met its burden to show by clear and convincing evidence that the Tollivers made a fraudulent transfer of property to the LLCs. Id. at 4-7. The LLCs argue that they were denied the minimal due process guaranteed by the Fifth Amendment of the United States Constitution, because they were not joined as parties before

the October 26, 2011 hearing. Id. at 1-3. They also challenge the magistrate judge's recommendation that the transfers of property to the LLCs were fraudulent. Id. at 6-7.

Before reaching the LLCs' due process arguments, the Court will consider whether Scottsdale has shown that transfers of property to the LLCs were fraudulent under the Act. The purpose of the Act is "to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of reach of present and future creditors." Burrows v. Burrows, 886 P.2d 984, 988 (Okla. 1994). Under the Act, a creditor may seek to avoid a transfer or execute on property transferred to a third party if he meets his burden to show that the transfer was fraudulent. OKLA. STAT. tit. 24, § 119. A transfer is fraudulent if it is made:

1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2. without receiving a reasonably equivalent value to exchange for the transfer or obligation, and the debtor:

   a. was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or

   b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

OKLA. STAT. tit. 24, § 116. A debtor will rarely acknowledge that a transfer was made with fraudulent intent, but the Act provides 11 factors that a court may consider to determine if a debtor acted with the requisite intent:

1. the transfer or obligation was to an insider;

2. the debtor retained possession or control of the property transferred after the transfer;

3. the transfer or obligation was disclosed or concealed;

8

4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5. the transfer was of substantially all the debtor's assets;

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Id. The Tollivers argue that the Act requires a creditor to prove a fraudulent transfer by clear and convincing evidence. Dkt. # 291. The case cited by the Tollivers to support this proposition is a pre-Act case, Levinson v. Glidden, 37 P.2d 924 (Okla. 1934); however, in an abundance of caution, the Court will require Scottsdale to prove a fraudulent transfer by clear and convincing evidence.

The Court has reviewed the Tollivers' objections to the magistrate judge's report and recommendation, and they argue that Scottsdale failed to present evidence concerning a required element of a claim under the Act -- that the Tollivers are insolvent -- and that this is an essential element that must be proven to establish a fraudulent transfer. Dkt. # # 291, at 6. The Court agrees. The Act provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was

9

> insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

OKLA. STAT. tit. 24, § 117 (emphasis added). There is no evidence in the record that establishes the Tollivers' insolvency before or after the transfer. In response to discovery requests from Scottsdale, the Tollivers deny that they are insolvent and they state that they have sufficient assets to pay the judgment. Dkt. # 278-1, at 2; Dkt. # 278-3, at 2-3. At the motions hearing, Scottsdale's attorney took the position that the "transfer rendered the Tollivers insolvent" but he failed to cross-examine Sandra Tolliver on this issue or otherwise present evidence to prove this element. Scottsdale could have shown that it attempted to execute on the judgment but it was been unsuccessful due to the Tollivers' insolvency. However, Scottsdale has presented no evidence that it actually attempted to execute on its judgment, and the Court cannot infer that the Tollivers are insolvent. At this time, the record is insufficient to establish that the Tollivers are insolvent and this is an essential element of Scottsdale's claim for relief under the Act.

The Court hereby returns the matter to the magistrate judge for a supplemental report and recommendation on the issue of insolvency.

**IT IS THEREFORE ORDERED** that the matter is returned to the magistrate judge for a supplemental report and recommendation on the issue of insolvency at the time of or as a result of the transfers.

**DATED** this 16th day of February, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT