IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-cv-0227-CVE-FHM |
| ) | |
| MICHAEL S. TOLLIVER, and ) | |
| SANDRA L. TOLLIVER, ) | |
| ) | |
| Defendants. ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

On January 11, 2012, the undersigned issued a Report and Recommendation (dkt. # 287), which recommended that plaintiff's Motions for Writs of Execution (dkt. ## 257, 258) be granted. The Report and Recommendation relied on the undersigned's finding that defendants had, under the Oklahoma Fraudulent Transfer Act (the "Act"), fraudulently transferred assets to two LLCs after plaintiff had obtained its judgment in this matter. Defendants objected to the Report and Recommendation (dkt. ## 288, 291), arguing that under Section 117 of the Act plaintiff's motion must fail, because plaintiff did not provide evidence of defendants' insolvency, an essential element for relief under Section 117. (Dkt. # 291, at 5-6). The District Court agreed and entered its February 16, 2012 Opinion and Order (dkt. # 295), recommitting this matter for a supplemental report and recommendation that addresses whether or not defendants were insolvent at the time of or as a result of the asset transfers to the LLCs.

On February 20, 2012, plaintiff filed a Motion to Reconsider the District Court's February 16 order, arguing that a showing of insolvency is not a necessary element in establishing a fraudulent transfer under Section 116 of the Act. (Dkt. # 297). The District Court denied plaintiff's motion, but said, "The Court finds that the parties and the Court will benefit if

the parties' arguments concerning application of the Act are made to the magistrate judge in the first instance, rather than by the Court's consideration of objections to a report and recommendation or a motion to reconsider." (Dkt. # 300 at 3). Thus, the undersigned must address two issues: (1) whether defendants' were insolvent at the time of the transfers to the LLC's or became insolvent as a result of those transfers; and (2) whether a finding of insolvency is necessary in order for there to be a fraudulent transfer under the Act.[1]

## DISCUSSION

"The purpose of the [UFTA] is to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of reach of present and future creditors." Burrows v. Burrows, 886 P.2d 984, 988 (Okla. 1994). Under the Act, the burden of proof is on the creditor to establish the elements of a fraudulent transfer claim. In re Solomon, 300 B.R. 57, 63 (Bankr. N.D. Okla. 2003), aff'd, 299 B.R. 626 (B.A.P. 10th Cir. 2003); In re Lexington Oil & Gas Ltd., Co., 423 B.R. 353, 364 (Bankr. E.D. Okla. 2010). In the initial Report and Recommendation, the undersigned considered whether plaintiff had met this burden by clear and convincing evidence. (Dkt. # 295). The undersigned applies the same standard here.[2]

---

[1] The undersigned held an insolvency hearing on February 23, 2012 (dkt. # 296). At the hearing, the undersigned heard evidence regarding the financial status of defendants during the relevant time period and arguments, over defendants' and the LLCs' objection, regarding the necessity of an insolvency finding under the Act.

[2] The undersigned used the clear and convincing evidence standard out of an abundance of caution, since Oklahoma courts have been silent on the issue, and the Northern District of Oklahoma Bankruptcy Court, in applying the Act, has used a preponderance of the evidence standard. See In re Solomon, 300 B.R. 57, 63 (Bankr. N.D. Okla. 2003), aff'd, 299 B.R. 626 (B.A.P. 10th Cir. 2003).

2

**Insolvency**

In seeking relief under the Act, plaintiff cited both Section 116 and Section 117 but, initially, clearly relied on Section 117. (Dkt. # 257 at 3-4; Dkt. # 258 at 3-4; Dkt. # 274 at 3-4). Section 117 requires a finding of insolvency:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation <u>and the debtor was insolvent at that time or the debtor became insolvent</u> as a result of the transfer or obligation.
>
> B. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, <u>the debtor was insolvent at that time</u>, and the insider had reasonable cause to believe that the debtor was insolvent.

<u>Id.</u> (emphasis added). <u>See also</u> <u>In re Dodd</u>, 97 B.R. 74, 75 (Bankr. N.D. Okla. 1989). The Act provides that a debtor is insolvent if "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Okla. Stat. tit. 24, § 114(A). This test of insolvency under the Act is essentially a "balance sheet" test that excludes exempt assets and includes other assets only to the extent that they are unencumbered. <u>In re Solomon</u>, 299 B.R. 626, 638-39 (B.A.P. 10th Cir. 2003) (". . . the bankruptcy court did not err on the issue of insolvency. The bankruptcy court constructed a "balance sheet" of Debtors' assets and liabilities, focusing on non-exempt and unencumbered assets that would be susceptible to liquidation").

During the February 23 hearing, defendants submitted a consolidated balance sheet showing their purported assets and liabilities for the time period before and just after the transfers to the LLCs.[3] <u>See</u> Defendant's Ex. 1. The balance sheet shows that on December 31, 2009, defendants had assets worth $3,554,300.00 and total liabilities in the amount of

---

[3] The time period is mid-February, 2010 through late May, 2010. February 23, 2012 Hearing Recording.

$1,494,800.00, giving them a net worth of $2,059,500.00. Defendant's Ex. 1. On June 1, 2010, the balance sheet shows total assets in the amount of $3,342,077.00 and liabilities in the amount of $1,472,000.00, giving defendants a net worth of $1,870,077.00. Id. However, the June 1, 2010 list of assets includes: (1) the value of defendant's units in the LLCs, which is listed as $2,114,200.00, (2) an exempt IRA valued at $117,000.00, and (3) an exempt life insurance policy valued at $17,000.00. Defendant's Ex. 1. In addition, the asset list includes six vehicles (two Mercedes, a Porsche 911, an Ironhorse motorcycle, and a Jeep Wrangler) valued at $233,000.00 on December 31, 2009 and $229,500.00 on June 1, 2010.[4] Id.

Defendants agree that if their units in the LLCs are not included in their assets, then they were insolvent during the relevant time period. See Hearing Recording. However, they argue that it is the value of the properties transferred, net of any mortgage or encumbrance against those properties, which is to be used in the calculation under the Act, not the unit value of the LLCs. Section 114 of the Act provides that "[a]ssets pursuant to the provisions of this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors. . .." First, this section makes clear that if defendants transferred assets to the LLCs with the intent to hinder, delay, or defraud plaintiff (as the undersigned found in the initial Report and Recommendation), this section prevents them from including those assets on their balance sheet. Second, this section also seems to bar defendants from counting in their assets the value of the LLC units; otherwise, a party could intentionally hinder a creditor by

---

[4] A review of Kelley Blue Book (KBB) retail prices for these vehicles indicates that defendants may have overvalued them on their balance sheet. For instance, KBB shows that the Mercedes SL55, if in excellent condition and with most premium options, would retail at $61,814.00 and would sell in a third party transaction for $58,114.00, not $100,000.00 as listed. Admittedly, the values shown in the balance sheet are for June, 2010, but approximately $40,000.00 in depreciation seems large for a period of less than two years. Nonetheless, the undersigned has assumed that the values identified by defendants are accurate.

sheltering assets within an LLC while indirectly including those assets on their balance sheet to avoid a finding of insolvency.[5]

Here, however, defendants claim that the LLCs' value on their balance sheet does not reflect the debt attached to the assets in the LLCs. This argument makes little sense, since the unit value of an LLC would, as a matter of definition, take into account the value of the assets in the LLC less any liabilities, including any encumbrances on the LLCs' assets. However, due to the timing of the February 23 hearing and the fact that defendants did not produce their balance sheet in advance, plaintiff was not able to investigate the validity of defendants' representations. In addition, the amounts paid for the properties that were transferred to the LLCs tend to support defendants' position. Thus, the undersigned recommends that the value of the LLCs, as reflected on the balance sheet, be subtracted from defendants' assets and that the value of the mortgages against the properties in the LLCs be subtracted from defendants' liabilities, without prejudice to plaintiff's ability to seek further discovery into the validity of defendants' balance sheet. In this regard, defendant S. Tolliver testified that the first three liabilities on Defendants' Ex. 1 are mortgages against properties held in one of the LLCs. February 23, 2012 Hearing Recording. The amount of these mortgages is $574,000.00, thus resulting in a net reduction in defendants' net worth of $1,540,200.00. The exempt assets, totaling $133,000.00, are also to be subtracted from defendants' net worth, leaving defendants with a total net worth of $196,811.00. Although the undersigned has serious questions regarding the validity of the assets shown on Defendants' Ex. 1, the evidence, as presented, is insufficient to conclude, by clear and convincing or by a preponderance of the evidence, that defendants were insolvent at the time they transferred assets to the LLCs.

---

[5] The debtor could do indirectly what he or she could not do directly.

Based on the foregoing, the undersigned RECOMMENDS that plaintiffs' motion be denied to the extent that it seeks relief under Section 117 of the Act.

**Section 116**

Section 116 provides that "[a] transfer made or obligation incurred by a debtor <u>is fraudulent as to a creditor</u>, whether the creditor's claim arose before or after the transfer was <u>made</u> or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Okla. Stat. tit. 24, § 116 (emphasis added). Section 117, on the other hand, provides that "[a] transfer made or obligation incurred by a debtor <u>is fraudulent as to a creditor</u> whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Okla. Stat. tit. 24, § 117 (emphasis added). Thus, both Section 116 and Section 117 describe factual scenarios which, if present, result in a finding that a transfer or obligation incurred was "fraudulent as to a creditor." However, the factual scenarios are markedly different under these sections.

Under Section 117, the debtor must be insolvent or become insolvent as a result of the transfer or obligation incurred, and the creditor's claim must have arisen prior to the transfer or obligation. Section 116, on the other hand, applies to transfers or obligations incurred both before and after the creditor's claim arose, so long as there is a showing that the purpose of the transfer or incurred obligation was to hinder, delay, or defraud a creditor. Insolvency is but one of eleven identified factors under Section 116 (and even the eleven factors are not exclusive). Thus, not only does Section 116 provide an independent means by which a court can enter a

finding that a transfer was "fraudulent as to a creditor," but also there is nothing in Section 116 that requires a finding of insolvency: "In determining actual intent pursuant to the provisions of paragraph 1 of subsection A of this section, consideration <u>may</u> be given, among other factors, to whether . . . the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Okla. Stat. tit. 24, § 116(B.) (emphasis added). Courts considering Section 116 have reached the same conclusion. <u>See</u>, <u>e.g.</u>, <u>In re Lexington Oil & Gas Ltd., Co.</u>, 423 B.R. 353, 372 (Bankr. E.D. Okla. 2010) (Section 116(B.) lists several "badges of fraud" that are to be considered in determining fraudulent intent). In <u>Lexington</u>, the court considered the same argument made by defendants here, that solvency at the time of a transaction prevents that transaction from being fraudulent. The court concluded otherwise, stating: "The argument misses the mark. For purposes of § 116A(1) of the UFTA, if an actual intent to defraud is found, 'solvency is immaterial.'" <u>Id.</u> at 373. Further, nothing in either section 116 or 117, or in the Act, indicates that the provisions of both sections must be met. Thus, the undersigned concludes that a finding of insolvency is not a necessary prerequisite to a finding that the transfers by defendants to the LLCs were fraudulent as to plaintiff.

**Impact on Report and Recommendation**

In the Report and Recommendation, the undersigned found that defendants transferred assets into the LLCs with the actual intent to hinder, delay, or defraud plaintiff. In doing so, the undersigned found the presence of five of the eleven "badges of fraud" set out in Section 116(B.). (Dkt. # 287 at 5-6). None of the evidence received at the February 23 hearing changes that analysis, but the undersigned will summarize a portion of it anyway:

7

1. The operating agreements for the LLCs are the same, and both LLCs were formed on February 12, 2010. The Tollivers received their membership units in both LLCs on this same day, and both own 50% of each LLC.

2. Defendants received nothing but the alleged increased in value of the LLCs for the transfers of property into the LLCs.

3. Defendants owned the properties transferred to the MST LLC for periods varying from approximately 1 year to 16 years prior to the transfer.

4. Defendants owned the properties transferred to the SLT LLC for periods varying from less than one year to 35 years.

5. S. Tolliver testified that the benefit of having the properties in the LLCs is the ability to offset expenses with income across various assets. She testified that if the properties are held separately, then income from one asset cannot be offset by expenses on another.

February 23, 2012 Hearing Recording.

Addressing these additional facts in reverse order, S. Tolliver's testimony regarding the reason defendants transferred the various properties and assets to the LLCs provides additional detail regarding her earlier explanation that the transfers were made to obtain tax benefits, not to hinder, delay, or defraud plaintiff. The undersigned continues to find this explanation lacking. The ability to claim the tax benefits described by S. Tolliver is a legal issue, in support of which defendants provided no authority, and the undersigned has not been able to locate any (i.e., authority that supports S. Tolliver's assertion that in a closely held LLC a married couple can take advantage of income and expense offsets that were not available when the couple held the property individually or jointly). As to the third and fourth numbered facts, they establish that some of the transferred assets were held by defendants (either individually or jointly) for lengthy

periods of time prior to the transfer. These facts further support the undersigned's prior conclusion that the only credible explanation for the timing of the transfers is that defendants were attempting to avoid the Judgment in this case. As to the first two facts, they again establish that defendants received no value for the transfers (as was addressed in more detail in the Report and Recommendation). Finally, the undersigned found S. Tolliver no more credible at the insolvency hearing than in the prior hearing.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the District Court find, if necessary to a resolution of plaintiff's motion, that defendants were not insolvent at the time they transferred the assets into the LLCs and that the transfer did not result in them becoming insolvent. In addition, the undersigned continues to RECOMMEND that plaintiff's Motion to Issue Writs of Garnishment be GRANTED for the reasons set forth herein and in the undersigned's earlier Report and Recommendation.

## **OBJECTION**

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 18, 2012.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to:

> determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 4th day of March, 2012.

_____
T. Lane Wilson
United States Magistrate Judge