## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

SCOTTSDALE INSURANCE            )
COMPANY,                        )
                                )
        **Plaintiff,**          )
                                )
v.                              )        Case No.  **04-CV-0227-CVE-FHM**
                                )
MICHAEL S. TOLLIVER,            )
SANDRA L. TOLLIVER,             )
SLT PROPERTIES, LLC, and        )
MST PROPERTIES, LLC,            )
                                )
        **Defendants.**         )

## OPINION AND ORDER

Now before the Court are the report and recommendation (Dkt. # 287) and the supplemental

report and recommendation (Dkt. # 304) concerning Plaintiff's Application for Writ of Execution

(Dkt. # 257), Plaintiff's Application for Writ of Execution (Dkt. # 258), and Plaintiff's First

Amended Application for Writ of Execution (Dkt. # 274).   Plaintiff Scottsdale Insurance Company

(Scottsdale) seeks to execute on property that defendants Sandra and Michael Tolliver transferred

to SLT Properties, LLC (SLT) and MST Properties, LLC (MST) (collectively referred to as the

LLCs) on the ground that the transfers to the LLCs were made in violation of the Uniform

Fraudulent Transfer Act, codified in Oklahoma as OKLA. STAT. tit. 24, §§ 112-123 (the Act).   On

February 16, 2012, the Court returned this matter to the magistrate judge for additional proceedings

on Scottsdale's applications.   See Dkt. # 295.   As stated by the magistrate judge, this matter was

returned to him for consideration of two issues: "(1) whether defendants were insolvent at the time

of the transfers to the LLC's [sic] or became insolvent as a result of those transfers; and (2) whether

a finding of insolvency is necessary in order for there to be a fraudulent transfer under the Act."

Dkt. # 304, at 2.  The magistrate judge entered a supplemental report and recommendation (Dkt. # 304) stating that Sandra and Michael Tolliver were solvent at the time the transfers were made, but that this does not preclude a finding that the Tollivers committed a fraudulent transfer under OKLA. STAT. tit. 24, § 116(A)(1).  He recommended that the Court find that the transfers of property to the LLCs were fraudulent under § 116(A)(1), and that the application for writs of execution be granted. The Tollivers and the LLCs object to his original and supplemental reports and recommendations, and Scottsdale has responded to the objections.

## I.

Scottsdale issued a homeowner's insurance policy to Sandra and Michael Tolliver for a house located at 1735 East 31st Street in Tulsa, Oklahoma.  However, the Tollivers failed to list all of their prior losses on their application and, in particular, they did not advise Scottsdale that they had suffered at least three prior fire losses within the relevant time period.  The insured property was destroyed in a fire and the Tollivers submitted a claim under the insurance policy.  On March 19, 2004, Scottsdale filed this case alleging that the Tollivers omitted material information on their application for homeowner's insurance, and Scottsdale sought a declaratory judgment that it was not obligated to pay the insurance claim submitted by the Tollivers.  Dkt. # 1.  The case went to trial, a jury found in favor of Scottsdale, and judgment was entered for plaintiff.  Dkt. ## 125, 127.  The Tollivers appealed the judgment to the Tenth Circuit Court of Appeals, and the case was remanded for a new trial.  Scottsdale prevailed at the second trial as well.  In reaching this verdict, the jury necessarily found by clear and convincing evidence that the Tollivers acted with intent to deceive when they misrepresented their loss history.  See Dkt. # 177, at 19 (jury instruction setting forth

elements of plaintiff's claim).  The Tollivers appealed the judgment and it was affirmed on appeal. Dkt. # 240.

Scottsdale moved for attorney fees in the amount of $163,330 after the second trial, and the motion was referred to Magistrate Judge Frank H. McCarthy.  Magistrate Judge McCarthy entered a partial report and recommendation (Dkt. # 227) as to the legal basis to award Scottsdale attorney fees, and he recommended that Scottsdale's motion for attorney fees be granted.  The parties agreed to the amount of $140,000.  Dkt. # 235.  The magistrate judge entered a final report and recommendation that Scottsdale be awarded attorney fees in the agreed upon amount.  Dkt. # 236. The Tollivers objected to the final report and recommendation and argued that Scottsdale was not entitled to recover any attorney fees.  The Court overruled the Tollivers' objections and entered judgment for attorney fees in favor of Scottsdale in the amount of $140,000.  Dkt. ## 242, 243.  On October 27, 2009, the Tollivers appealed the judgment for attorney fees.  On February 24, 2011, the judgment for attorney fees was affirmed by the Tenth Circuit.  Dkt. # 249.

Scottsdale requested an asset hearing, and Magistrate Judge T. Lane Wilson held an asset hearing on August 17, 2011.  Dkt. # 256.  Scottsdale learned during or shortly after the hearing that Sandra Tolliver had transferred parcels of real property to SLT on March 12, 2010.  Dkt. # 257, at 2-3.  SLT is a limited liability company formed under Oklahoma law, and Sandra and Michael Tolliver each have a fifty percent interest in SLT.  Scottsdale claims that the transfer of property to SLT was a fraudulent transfer in violation of the Act, and it requests a writ of execution on the property transferred to SLT and an order of sale to satisfy Scottsdale's judgment.  Id. at 5. Scottsdale also discovered that the Tollivers had transferred securities and other real property to MST in February and March 2010, and Sandra and Michael Tolliver each have a fifty percent

interest in MST. Dkt. # 258. Scottsdale alleges that the circumstances under which the transfers were made show that the Tollivers were attempting to shield assets from possible execution by Scottsdale on its judgment for attorney fees, and it requests a writ of execution on the property transferred to MST and an order of sale to satisfy Scottsdale's judgment. Scottsdale attached to its original applications for writ of execution the general warranty deeds transferring real property and securities from the Tollivers to the LLCs and the operating agreement for MST.[1] See Dkt. ## 257, 258.

Scottsdale's applications for writs of execution were referred to Magistrate Judge Wilson, and he set the applications for hearing on October 19, 2011. Dkt. # 263. Sandra and Michael Tolliver appeared at the hearing represented by counsel, but their attorney stated that he did not represent the LLCs. The magistrate judge advised the Tollivers that the LLCs would be required to obtain their own attorney, and he reset the hearing for October 26, 2011. Dkt. # 264. On October 26, 2011, defendants and the LLCs appeared and all were represented by counsel.[2] Defendants objected to proceeding with the hearing on the ground that the LLCs had not been joined as parties and served, and the magistrate judge noted defendants' objection. Dkt. # 292, at 5. Sandra Tolliver

---

[1]     The LLCs claim that the MST operating agreement was not admitted into evidence at the October 26, 2011 hearing and that it should not be considered by the Court. Dkt. # 288, at 5. However, it was attached to Scottsdale's application for writ of execution, and it was clearly part of the record before the magistrate judge. Dkt. # 258-14, at 1-9.

[2]     The Court notes that Michael Tolliver was represented by Stanley Monroe at the hearing. Monroe is Michael Tolliver's attorney in a criminal case in the United States District Court for the Northern District of Oklahoma, and Michael Tolliver has been convicted of using fire or explosives to commit mail fraud and arson. United States of America v. Michael Sherman Tolliver, 10-CR-141-JHP (N.D. Okla.). Counts seven and eight specifically dealt with the Tollivers' insurance claim submitted to Scottsdale, and the government alleged that Michael Tolliver committed arson and submitted a fraudulent insurance claim. Id., Dkt. # 36, at 3. The jury found Michael Tolliver guilty on counts seven and eight.

was the only witness to testify at the hearing.  She claims that the purpose of forming the LLCs was to "put together the properties, the investment properties, so that income and expenses from more than one is in one entity for tax benefits."  Id.  Sandra and Michael Tolliver owned all assets transferred into the LLCs, and the LLCs had no assets or value prior to the transfers.  The Tollivers received no consideration from the LLCs for transferring property other than membership in the LLCs.  Id. at 6.  Certain assets were sold or refinanced by MST to pay Michael Tolliver's criminal forfeiture penalty in his criminal case, but the Tollivers did not receive any assets from the transactions.  Id. at 9-10.  Sandra Tolliver testified that the value of the stocks held by MST is approximately $140,000, and the stocks are not pledged to any creditor.  Id. at 11-12.  Counsel for plaintiff explained that it was necessary to execute on the property in the LLCs, because a charging order against defendants would not give plaintiff access to the property held by the LLCs.  The charging order would simply permit plaintiff to execute against property of defendants if they actually removed property from the LLCs, but plaintiff would not be able to execute on property while it remained in the control of the LLCs.  Id. at 7.  Counsel for the LLCs argued that the LLCs had been denied due process, because the LLCs had not been served and were not parties to the case. Id. at 19.  The LLCs acknowledged that the owners of the LLCs were parties, but they argued that third parties with interests in or debts related to the LLCs would be harmed unless Scottsdale was required to bring a separate lawsuit against the LLCs to execute on the LLCs' property.  Id. at 21. Scottsdale responded that third parties would receive no notice even if it brought a separate lawsuit against the LLCs, and this argument was not a legitimate basis to prevent it from executing on property held by the LLCs.  Id. at 22.  The parties did not present any evidence concerning the Tollivers' financial status before or after transferring property to the LLCs.  Scottsdale asked the

magistrate judge to enjoin defendants from transferring or taking any other action concerning the property held by the LLCs while Scottsdale's applications remained pending, and defendants did not object to Scottsdale's request. Id. at 23-24.  In the magistrate judge's minutes of the hearing, he ordered that "no further encumbrances be placed on the property and the LLCs, and no transfer of assets from the LLCs absent further order of the court."  Dkt. # 268.

Scottsdale issued written discovery requests to the Tollivers after the hearing, asking the Tollivers to "[d]escribe with specificity each and every reason why you transferred securities owned by you to [MST]."  Dkt. # 278-3, at 1.  The Tollivers responded that they transferred securities to MST to "have liquid asset [sic] as capital contribution available to pay for the repair, remodeling or maintenance work on the LLC's properties or pay the on-going obligations, such as mortgage payments, insurance and property taxes, if needed.  To provide additional income to the LLC from dividends."  Id. at 1-2.  Scottsdale also filed a motion to join SLT and MST as defendants.  The magistrate judge granted the motion, and Scottsdale served the magistrate judge's order on SLT and MST.  Dkt. # 273.  Scottsdale filed its amended application for writ of execution (Dkt. # 274) with all previously attached exhibits, and served the amended application on SLT and MST.   SLT and MST filed a response to the amended application and stated:

> 1.  The LLCs admit this Court has jurisdiction over the subject matter of this case. The LLCs were served with a file-stamped copy of Plaintiff's Application on or about December 14, 2011, through their undersigned counsel.  Although no summons or other process was issued or served upon the LLCs, by the filing of this response the LLCs enter an appearance herein and by virtue thereof this Court has *in personam* jurisdiction over the LLCs.

Dkt. # 283, at 1.  The LLCs admit that they are wholly owned and controlled by the Tollivers and that the transfers of securities and real property to the LLCs occurred after entry of the judgment for attorney fees. Id. at 2.

6

The magistrate judge entered a report and recommendation on Scottsdale's original and amended applications for writ of execution. He considered the evidence attached to the applications and the testimony of Sandra Tolliver, and stated that her explanation for forming the LLCs was not credible. Dkt. # 287, at 3-4. There was no evidence that the Tollivers received any consideration for transferring property to the LLCs, and the alleged tax reasons for creating the LLCs were vague and unsubstantiated. Id. at 3. He also noted that Sandra Tolliver's reason for creating the LLCs stated at the hearing conflicted with the Tollivers' discovery responses, and both explanations lacked credibility. Id. at 3-4. He stated that the "evidence establishes that defendants transferred, for no legitimate, identifiable reason, substantial assets to the LLCs after becoming subject to the judgment in this case." Id. at 4. The magistrate judge considered the factors enumerated in OKLA. STAT. tit. 24, § 116(B) to determine whether transfers of property to the LLCs were fraudulent under the Act, and he stated that several factors strongly supported Scottsdale's argument that the transfers were fraudulent. Id. at 5-6. In particular, he stated that the Tollivers retained control of property transferred to SLT and MST because they were the only members of the LLCs, and the transfers were made to insiders within the meaning of the Act. Id. at 5. The timing of the transfers suggested that the Tollivers acted with fraudulent intent and the effect of the transfers was to place the transferred property "beyond the reach of plaintiff's effort to satisfy the judgment." Id. at 6. The magistrate judge also rejected the LLCs' argument that they had been denied procedural due process, because the LLCs clearly had notice of Scottsdale's applications for writ of execution and had an opportunity to make oral and written objections to Scottsdale's request to avoid the transfers to the LLCs. Id. at 8. The Tollivers and the LLCs filed objections to the magistrate judge's report and recommendation.

The Tollivers, in part, objected that Scottsdale failed to show that the Tollivers were insolvent, and that this precluded a finding that the transfers to the LLCs were fraudulent. Dkt. # 291, at 6. Scottsdale filed a response to the Tollivers' objection but it did not respond to this specific objection. <u>See</u> Dkt. # 294. The Court reviewed Scottsdale's applications and the evidence submitted by Scottsdale, and found no evidence to support a finding of insolvency. The Court returned the matter to the magistrate judge for a determination of the Tollivers' solvency before and after the transfers of property to the LLC. Dkt. # 295, at 10. The magistrate judge set the matter for an insolvency hearing on February 23, 2012. Dkt. # 96. Scottsdale filed a motion to reconsider, arguing that a finding of insolvency was unnecessary for the Court to grant relief under § 116(A)(1) of the Act, and asked the Court to rule on the matter without returning the matter to the magistrate judge. Dkt. # 297. The Court denied Scottsdale's motion to reconsider but the Court expanded the scope of the issues being returned to the magistrate judge:

> the Tollivers argued in objection to the magistrate judge's report and recommendation that § 117 applied and that insolvency was a required element of plaintiff's claim, and plaintiff chose not to respond to this argument. The arguments stated in plaintiff's motion to reconsider should have been raised in plaintiff's response to the Tollivers' objections to the report and recommendation. <u>See</u> <u>Van Skiver v. United States</u>, 952 F.2d 1241, 1243 (10th Cir. 1991) (party cannot seek reconsideration based on arguments that could have presented to the court in a prior pleading). The Court finds that the parties and the Court will benefit if the parties' arguments concerning application of the Act are made to the magistrate judge in the first instance, rather than by the Court's consideration of objections to a report and recommendation or a motion to reconsider.

Dkt. # 300, at 2-3. The magistrate judge held an evidentiary hearing on February 23, 2012, and the Tollivers produced evidence of their assets and liabilities before and after the transfers of property

to the LLCs.[3]  As stated by the magistrate judge, he determined that he should enter a supplemental report and recommendation considering "(1) whether [the Tollivers] were insolvent at the time of the transfers to the LLC's [sic] or became insolvent as a result of those transfers; and (2) whether a finding of insolvency is necessary in order for there to be a fraudulent transfer under the Act." Dkt. # 304.  Defendants objected to consideration of any issue other than Tollivers' insolvency and argued that the latter issue was not referred to the magistrate judge in the Court's opinion and order (Dkt. # 295).  Dkt. # 309, at 10, 29-30, 84.  The magistrate judge overruled defendants' objections. Sandra Tolliver testified at the hearing and described the Tollivers' assets before and after forming the LLCs.  The Tollivers' balance sheet showed that the Tollivers' primary asset after forming the LLCs was the increased value of the LLCs, and she testified that she received no other consideration for making the transfers.  Id. at 8.  The Tollivers had owned some of the properties transferred to the LLCs for 15 years or more, although she could recall exactly how long the Tollivers owned each property.  Id. at 9-14.  Sandra Tolliver testified that the Tollivers decided to form the LLCs in 2010 after she bought a building for her legal practice, and she decided to restructure ownership of the Tollivers' various properties at the same time.  Id. at 15. She also claimed that the Tollivers received a tax benefit by grouping the properties in the LLCs, because the Tollivers were able to offset any expenses incurred to maintain the properties against income of the LLC.  Id. at 15-17.  The Tollivers also transferred securities to the LLCs in May 2010.  Id. at 18-21.  Sandra Tolliver was not clear when the Tollivers intended to pay the judgment for attorney fees, except that she would pay the judgment "[w]hen I have cash to pay it."  Id. at 31.  Counsel for the LLCs argued that the magistrate

---

[3]     Michael Tolliver did not attend the February 23, 2012 hearing because he was in custody awaiting sentencing in his criminal case, and the parties agreed that his presence was not necessary.  Dkt. # 309, at 3.

judge was limited to consideration of the Tollivers' balance sheets only to determine whether they were insolvent, and that the increased value of the LLCs should be considered an asset of the Tollivers after the transfers took place.  Id. at 42-53.  Sandra Tolliver was cross-examined by counsel for the LLCs.  Id. at 65-72.  The magistrate judge also heard closing arguments from the parties.

The magistrate judge entered a supplemental report and recommendation (Dkt. # 304) recommending that Scottsdale's applications for writs of execution be granted, but he recommended that the Court not find the Tollivers insolvent at the time they transferred property to the LLCs.  He noted that he had "serious questions about the validity of the assets" stated by defendants, but he found that the evidence did not establish the Tollivers' insolvency by clear and convincing evidence.  Dkt. # 304, at 5.  He considered Scottsdale's argument that a finding of insolvency is not required to grant relief under § 116(A)(1), and he agreed with Scottsdale's position.  He summarized the key recommendations  from the original report and recommendation concerning application of the § 116(B) factors, and again recommended that Scottsdale's applications be granted.   The Tollivers and the LLCs filed timely objections to the supplemental report and recommendation, and Scottsdale has responded to the objections.

## II.

Without consent of the parties, the Court may refer any matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## III.

Scottsdale argues that the transfers of property to the LLCs were fraudulent under the Act, and its applications for writ of execution rely on OKLA. STAT. tit. 24, §§ 116 and 117 as bases for relief.  Scottsdale does not challenge the magistrate judge's recommendation concerning the Tollivers' solvency but, instead, argues that it is entitled to relief under § 116(A)(1) even if the Tollivers remained solvent after the transfers to the LLCs were made. Dkt. # 308, at 5-9.  The Tollivers and the LLCs argue that they have been denied due process throughout the post-judgment proceedings, and ask the Court to deny Scottsdale's applications for writs of execution.[4] They also argue that Scottsdale has not shown by clear and convincing evidence that the transfers to the LLCs were fraudulent.

## A.

Defendants argue that they have been denied due process at various stages of the post-judgment proceedings.  The LLCs argue that were not properly joined as parties before the October 26, 2011 hearing, and that they did not receive notice or an opportunity to be heard before the magistrate judge issued his original report and recommendation. Dkt. # 288, at 2-3. Defendants also argue that the magistrate judge considered issues beyond those referred to him in the Court's prior

---

[4]     Even if the Court were to find a denial of due process, the proper remedy would not be to deny plaintiff's applications but, instead, to provide defendants any additional process to which they are entitled.

opinion and order (Dkt. # 295), and that they were denied pre-hearing notice that the magistrate judge would consider arguments concerning the applicability of the Act. Dkt. # 306, at 3; Dkt. # 307, at 3.

The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V. The Tenth Circuit has established a two-step inquiry to determine whether a party has received due process. First, the Court must determine whether the person has a protected interest under the Due Process Clause that triggers a right to any procedural protections. Greene v. Barrett, 174 F.3d 1136 (10th Cir. 1999). Second, the Court must consider the nature of the proceedings and determine whether the person has received an "appropriate level of process." Federal Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999). At a minimum, a party must receive notice and an opportunity to be heard. United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993). There is no dispute that LLCs hold title to certain property and that Scottsdale seeks to execute on that property. The LLCs clearly have a property interest sufficient to support a due process claim. The Tollivers also have a property interest in the same property, because the issue in this case is whether property was fraudulently transferred to the LLCs and avoiding the transfers to the LLCs will clearly affect their property interests.

The LLCs argue that they were ordered to attend the October 26, 2011 hearing but they were not joined as parties at that time, and that this deprived them of an opportunity to make arguments or present evidence at the hearing. At the hearing, counsel for the LLCs argued that the LLCs had not been named as parties or served with process, and that the Court lacked authority to set aside the transfers of property to a party not properly before the Court. Dkt. # 292, at 19-20. The magistrate

judge noted that the only members of the LLCs were the Tollivers, and that this situation was likely distinguishable from other cases involving the due process rights of non-parties. Id. at 20. Sandra Tolliver testified at that hearing, and the LLCs chose not to examine her or to present any evidence to the magistrate judge. Scottsdale filed an amended application for writ of execution (Dkt. # 274) and joined the LLCs as parties. The LLCs filed a written response objecting to the amended application. Dkt. # 283. The magistrate judge issued a report and recommendation and the LLCs filed an objection (Dkt. # 288) to the report and recommendation. The Court returned the matter to the magistrate judge for a determination of the Tollivers' solvency, and Scottsdale asked the Court to reconsider its decision. In its order denying Scottsdale's motion, the Court stated that "the parties and the Court will benefit if the parties' arguments concerning application of the Act are made to the magistrate judge in the first instance . . . ." Dkt. # 300, at 3. The magistrate judge held a second hearing on February 23, 2012, and the LLCs were present and represented by counsel. Scottsdale and defendants submitted documentary evidence to the magistrate judge, and Sandra Tolliver testified at the hearing. Counsel for the LLCs objected to questions concerning the Tollivers' present ability to pay and the applicability of the Act, but the magistrate judge overruled the objections. Dkt. # 309, at 29-30, 80-81. The LLCs argued that the Tollivers were solvent before and after the transfers were made. Id. at 43-53. Counsel for the LLCs also had an opportunity to cross-examine Sandra Tolliver. Id. at 65-74. The magistrate judge issued a supplemental report and recommendation (Dkt. # 304). The LLCs objected to the supplemental report and recommendation, and argued that magistrate judge erred by considering any issue other than the Tollivers' insolvency.

The LLCs suggest that they are entitled to the full process available to a party in a non-jury trial, but they cite no authority to support this argument. Dkt. # 288, at 5. The Supreme Court has

13

issued several decisions concerning the due process rights of a judgment debtor in property that is subject to seizure, but the decisions do not specify the amount of process to which the debtor is entitled. North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975); Fuentes v. Shevin, 407 U.S. 67 (1972); Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 (1969). In the context of post-judgment proceedings, the Third Circuit has found that "procedural protection is adequate if it represents a fair accommodation of the respective interests of the creditor and debtor." Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980). Creditors generally prefer a "swift, sure and inexpensive mechanism for collecting judgments," while debtors have a strong interest preserving property for their own uses. McCahey v. L.P. Investors, 774 F.2d 543, 549 (2d Cir. 1985). In determining if post-judgment procedures satisfy the Due Process Clause, the Tenth Circuit has directed district courts to balance these competing interests and fashion appropriate procedures, but there is no authority suggesting that all of the procedures available to parties in a civil trial are required. See Aacen v. San Juan County Sheriff's Dep't, 944 F.2d 691, 696 (10th Cir. 1991).

The Court finds that the LLCs have attempted to create a due process claim through their own inaction, and that they have been given an appropriate level of process under the circumstances. As stated by the LLCs, they attended the October 26, 2011 hearing and were represented by counsel, but they chose not to participate in the hearing based on their assertion that they were being denied due process. Dkt. # 288, at 3. In other words, the LLCs had notice of the hearing and an opportunity to be heard, but they made a conscious decision to stay on the sidelines in the hopes that the Court would later find a denial of due process. The Due Process Clause requires that a person receive notice and an opportunity to be heard, and that is exactly what the LLCs received. A party may not refuse to take advantage of an opportunity to be heard and later claim that he was denied

14

due process.  See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1195 (10th Cir.

2006); Dominion Video Satellite, Inc. v. Echostar Satellite LLC, 430 F.3d 1269, 1280 (10th Cir.

2005); Huxall v. First State Bank, 842 F.2d 249, 251 (10th Cir. 1988).  The Court also notes that this

case presents an unusual circumstance where the third party to the proceedings, the LLCs, were

allegedly formed by the named defendants to defeat plaintiff's right to execute on its judgment, and

the principal actors, the Tollivers, do not have any grounds to assert a due process claim.  The Court

has reviewed the transcripts of both hearings before the magistrate judge and the LLCs written

pleadings, and the LLCs have had a full and fair opportunity to present their arguments and evidence

to the Court.

Defendants also argue that they were denied due process because the magistrate judge

considered matters that were not expressly referred to him by the Court.  This is not a true due

process argument but, instead, it goes to the magistrate judge's authority to act under Fed. R. Civ.

P. 72(b).  The Court has reviewed the transcript of both hearings, the original report and

recommendation, and the supplemental report and recommendation, and does not find that the

magistrate judge considered issues beyond those referred to him.  Defendants argue that the

February 23, 2012 hearing was limited to the issue of insolvency only, but they ignore the Court's

February 21, 2012 order (Dkt. # 300) authorizing the magistrate judge to consider the "application

of the Act . . . in the first instance . . . ."  The clear intention of the Court's order was to have the

parties argue before the magistrate judge whether a finding of insolvency was necessary under §

116(A)(1), and the parties should have been prepared to address this issue.

15

**B.**

Scottsdale asks the Court to allow it to execute on real property and securities transferred to the LLCs, because the transfers were made for the sole purpose of shielding assets from Scottsdale's right to execute on its judgment for attorney fees.  Dkt. ## 257, 258, 274.  The purpose of the Act is "to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of reach of present and future creditors."  Burrows v. Burrows, 886 P.2d 984, 988 (Okla. 1994).  Under the Act, a creditor may seek to avoid a transfer or execute on property transferred to a third party if he meets his burden to show that the transfer was fraudulent.  OKLA. STAT. tit. 24, § 119.  A transfer is fraudulent to a creditor if it is made:

1.      with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2.      without receiving a reasonably equivalent value to exchange for the transfer or obligation, and the debtor:

     a.      was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or

     b.      intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

OKLA. STAT. tit. 24, § 116(A). Section 117 of the Act provides two tests to determine if a transfer is fraudulent as to a creditor whose claim arose before the transfer was made:

A.      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

B.      A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

OKLA. STAT. tit. 24, § 117. One of the issues referred to the magistrate judge was whether sections 116 and 117 provided exclusive grounds for relief under the Act and, in particular, whether a finding of the debtor's insolvency was necessary under § 116(A)(1).

The magistrate judge recommended that the Court find that the Tollivers were not insolvent as that term is defined by the Act. The parties have not challenged this recommendation, but the facts underlying this recommendation are critical to the application of the Act and the Court will summarize the law and facts stated by the magistrate judge in his supplemental report and recommendation. Under OKLA. STAT. tit. 24, § 114, a "debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." This has been described as a "balance sheet" test to determine whether a debtor's assets outweigh his liabilities. In re Sheffield Steel Corp., 320 B.R. 423 (Bankr. N.D. Okla. 2004). Exempt and encumbered assets should not be considered as assets of the debtor. See In re Solomon, 299 B.R. 626, 639 (B.A.P. 10th Cir. 2003). The Court also may not consider "property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable pursuant to the provisions of [the Act]." OKLA. STAT. tit. 24, § 114(D).

The Tollivers have submitted a balance sheet showing their consolidated assets for the period before and after the transfer of property to the LLCs. Defendants' Ex. 1. On December 31, 2009, the Tollivers had total assets of $3,554,300 and total liabilities of $1,494,800. On June 1, 2010, their total assets had dropped to $3,342,0770 and their liabilities had also dropped slightly to $1,472,000. However, the amounts of total assets and liabilities do not tell the whole story. Most of the

Tollivers' assets in 2009 were derived from real property held in their name, and they also had several checking and savings accounts with cash value. In contrast, the Tollivers assets in 2010 primarily consisted of the increased value of the LLCs after their real property had been transferred to the LLCs. In fact, neither MST nor SLT existed until February 12, 2010 but, in 2010, MST was valued at $1,814,200 and SLT was valued at $300,000. The value of the LLCs increased by $2,114,200 from December 31, 2009 to June 1, 2010. The Court also notes that the Tollivers' checking and savings accounts were nearly depleted in 2010. As of December 31, 2009, the Tollivers had $290,500 in cash and stocks, but they had only $2,777 in cash and stocks as of June 1, 2010. The Tollivers also list an exempt Independent Retirement Account (IRA) as an asset, and the IRA was valued at $117,000 in 2010.

The magistrate judge reviewed all of this evidence and recommended that the Tollivers had a net worth of $196,811 after the transfers to the LLC. Dkt. # 304, at 5. He had "serious questions regarding the validity of the assets" claimed by the Tollivers, but he found that the evidence was insufficient to establish by clear and convincing evidence that the Tollivers were insolvent. Id. Scottsdale does not challenge this recommendation and the Court finds that the magistrate judge's report and recommendation should be accepted on this issue. See Dkt. # 308. The Court also has serious questions about the validity of some of the Tollivers' claimed assets, and the Court is not convinced that a debtor may shelter assets in an LLC and still claim the increased value of the LLCs as an asset to avoid a finding of insolvency. However, under the clear and convincing standard, the Court accepts the magistrate judge's recommendation that the Tollivers were not insolvent under the Act.

The magistrate judge recommended that the Court treat § 116(A)(1) as a independent ground for relief from § 117, and defendants have not objected to this recommendation on the merits.[5]  The Court has considered the plain language of the Act and cases interpreting the Uniform Fraudulent Transfer Act, and concludes that a finding of solvency does not prevent a court from granting a creditor relief under § 116(A)(1).  Courts have found that a debtor made a fraudulent transfer regardless of the debtor's solvency.  In re Lexington & Gas Ltd., Co., 423 B.R. 353, 373 (Bankr. E.D. Okla. 2010); see also Georgia-Pacific Corp. v. Lumber Prods. Co., 590 P.2d 661 (Okla. 1979) ("For a conveyance to be fraudulent under the Act, there must be actual intent to hinder, delay, or defraud creditors (s 105), or the grantor be insolvent or be thereby rendered insolvent by the conveyance and made without a fair consideration (s104).").  The Act also sets out a separate statute of limitations for each subsection of §§ 116 and 117, and this supports a finding that each subsection creates an independent basis for relief.  OKLA. STAT. tit. 24, § 119.

Even though the Court has not found that the Tollivers were insolvent, this does not preclude a finding that the transfers to the LLCs were fraudulent under section 116(A)(1) of the Act.  A debtor will rarely acknowledge that a transfer was made with fraudulent intent, but the Act provides 11 factors that a court may consider to determine if a debtor acted with the requisite intent:

1.      the transfer or obligation was to an insider;

2.      the debtor retained possession or control of the property transferred after the transfer;

3.      the transfer or obligation was disclosed or concealed;

---

[5]      Defendants assert that the magistrate judge exceeded the scope of his authority by considering any issue other than the Tollivers' insolvency, but the Court has already determined that the magistrate judge acted within his authority.  See supra at III.A.

4.      before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5.      the transfer was of substantially all the debtor's assets;

6.      the debtor absconded;

7.      the debtor removed or concealed assets;

8.      the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9.      the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10.    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11.    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

OKLA. STAT. tit. 24, § 116(B).  The Oklahoma Supreme Court has referred to the statutory factors as "badges of fraud," and, "when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." Hildebrand v. Harrison, 361 P.2d 498, 505 (Okla. 1961).  The Tollivers argue that the Act requires a creditor to prove a fraudulent transfer by clear and convincing evidence. Dkt. # 291.  The case cited by the Tollivers to support this proposition is a pre-Act case, Levinson v. Glidden, 37 P.2d 924 (Okla. 1934); however, in an abundance of caution, the Court will require Scottsdale to prove a fraudulent transfer by clear and convincing evidence.[6]

----

[6]    Courts have not agreed on the burden of proof for a fraudulent transfer claim under the Uniform Fraudulent Transfer Act.  Epperson v. Entertainment Exp., Inc., 159 Fed. Appx. 249 (2d Cir. Dec. 12, 2005) (clear and convincing evidence); In re Pace, 456 B.R. 253 (Bankr. W.D. Tex. 2011) (preponderance of the evidence);

In his original report and recommendation (Dkt. # 287), the magistrate judge found that several of the § 116(B) factors indicated that the transfers of property to the LLCs were fraudulent. The transfers were made to insiders, because the Tollivers are the managers and only members of the LLCs. OKLA. STAT. tit. 24, § 116(B)(1). The Tollivers, in their capacity as members of the LLC, retained control over the transferred assets. Id. at § 116(B)(2). The transfers were made after the Court entered a judgment for attorney fees in favor of Scottsdale and while the appeal was still pending. Id. at § 116(B)(4). The Tollivers did not receive consideration or equivalent value, other than the increased value of the LLCs, for making the transfers to the LLCs. Id. at § 116(B)(8). The magistrate judge also cited § 116(B)(9) and noted that the transfers occurred shortly after the Tollivers incurred a substantial debt, but he did not make a finding of insolvency in the original report and recommendation. See Dkt. # 287, at 6. The magistrate judge could find no legitimate purpose for the transfers and it appeared that the primary purpose of the transfers was to place the transferred assets outside of the reach of judgment creditors. Id. at 7. Considering the number of § 116(B) factors present, the magistrate judge recommended that the Court grant Scottsdale's applications for writ of execution and find that transfer of property to the LLCs to be fraudulent under the Act.

The Tollivers and the LLCs have objected to the magistrate judge's recommendation concerning the application of § 116(A)(1), and the Court will independently determine whether plaintiff has met its burden under § 116(A)(1). The Tollivers argue that they had a legitimate purpose for forming the LLCs and the magistrate judge improperly placed the burden on the Tollivers to show that this explanation was credible. Dkt. # 291, at 3-4; Dkt. # 306, at 3. They argue that the increased value of the LLCs was consideration for making the transfers. Dkt. # 291, at 5.

They also claim that the transfers were presumptively valid and plaintiff has produced no evidence suggesting that the transfers were invalid at the time they were made. Id. at 7.

The statutory factors strongly support a finding that the Tollivers acted with fraudulent intent when transferring property to the LLCs. The Tollivers are the only members and managers of the LLC, and they were also the owners of the transferred property. The transfers were clearly made to insiders for the purpose of § 116(B)(1). The debtors (the Tollivers) also retained control over the property after the transfer, and they have the power the keep the property sheltered inside the LLCs for an indefinite period of time. See OKLA. STAT. tit. 24, § 116(B)(2). The timing of the transfers supports an inference that the transfers were fraudulent. The Court entered a judgment (Dkt. # 243) for attorney fees in favor of Scottsdale on September 29, 2009, and the Tollivers appealed the judgment. Between February and May 2010, the Tollivers transferred securities and real property to the LLCs. The Tenth Circuit entered its decision affirming the judgment on February 24, 2011. Dkt. # 249. The transfers occurred about five to eight months after entry of the judgment and the Tollivers were clearly aware that they would be required to pay the judgment if the Tenth Circuit affirmed this Court's decision. Thus, the Tollivers had been sued or threatened with suit before the transfers were made. OKLA. STAT. tit. 24, § 116(B)(4). The Tollivers transferred to the LLCs nearly all of their assets capable of being executed upon by a judgment creditor. Even if this did not render the Tollivers insolvent for purpose of the Act, the transfers had the effect of frustrating a judgment creditor by keeping the Tollivers' property out of reach of execution, and the Court finds that the transfers accounted for substantially all of the Tollivers' assets. OKLA. STAT. tit. 24, § 116(B)(5). In consideration for transferring nearly all of their assets to the LLCs, the Tollivers received only an increase in value of their ownership interests in the LLCs. The Tollivers and the LLCs argue that

this is fair consideration, but the Court disagrees.  The value of the transaction was derived solely

from the value of the transferred property, and the LLCs gave no additional consideration for the

transaction.  OKLA. STAT. tit. 24, § 116(B)(8).  This does not mean that the transfers were per se

invalid, but it does support a finding that the transfers were intended to shelter certain property in

an entity to avoid execution by a judgment creditor.

One of the Tollivers' primary arguments is that the magistrate judge erred by disregarding

their legitimate purpose for forming and transferring property to the LLCs.  The Tollivers argue that

Sandra Tolliver's uncontroverted testimony establishes that the Tollivers had a legitimate purpose

for transferring property to the LLCs, and that the magistrate judge erred by imposing a burden on

the Tollivers to prove that the stated reason for making the transfers was legitimate.  Dkt. # 291, at

3-4.  At the October 26, 2011 hearing, Sandra Tolliver testified that the purpose of forming the LLCs

was to "put together the properties, the investment properties, so that income and expenses from

more than one is in one entity for tax benefits."  Dkt. # 292, at 5.  The Tollivers did not receive any

consideration from the LLCs, other than the increased value of their ownership interest in the LLCs.

Id. at 6.  Sandra Tolliver elaborated on this explanation at the February 23, 2012 hearing, and she

stated that the Tollivers could offset the expenses of one property against the income of another and

achieve a tax benefit by grouping the properties in an LLC.  Dkt. # 309, at 9-10.  She also testified

that she purchased a building for her legal practice in 2009, and she  reorganized the Tollivers'

assets at the same time as she was "figuring out the tax benefits for the law practice."  Id. at 15.

When assessing the legitimacy of the Tollivers' stated reason for forming the LLCs, the Court does

not impose any burden on the Tollivers, and considers only the evidence presented by Scottsdale and

Sandra Tolliver's testimony at the hearings before the magistrate judge.

23

Considering the all of the evidence, the Court finds that Sandra Tolliver's explanation for forming and transferring property to the LLCs lacks credibility. Defendants suggest that Sandra Tolliver's testimony is uncontroverted, but they ignore much of the evidence in the record. See Dkt. # 306, at 5; Dkt. # 307, at 4. As the Court has noted, a judgment debtor will rarely acknowledge that a fraudulent transfer occurred and the Court must consider all of the evidence. The Tollivers owned some of the real property transferred to the LLCs for 15 years or more and, if forming an LLC provided a tax benefit, it is reasonable to assume that the Tollivers would have reorganized their properties well before 2010. The transfers occurred after judgment had been entered against the Tollivers and while the appeal was pending. The Tollivers received no consideration for the transfers other than the increased value of the LLCs. The Court also takes into consideration that the magistrate judge heard Sandra Tolliver testify at both hearings, and each time he found that her testimony lacked credibility and was not supported by any legal authority. Dkt. # 287, at 3-4; Dkt. # 304, at 8. The Court has listened to the audiorecording and reviewed the written transcript of both hearings, and the Court agrees with the magistrate judge's assessment of Sandra Tolliver's testimony.

The Court finds that Scottsdale is entitled to relief under § 116(A)(1) of the Act and its applications for writs of execution should be granted. Scottsdale has shown by clear and convincing evidence that numerous badges of fraud are present and the evidence shows that Sandra Tolliver's stated reason for forming the LLCs is not credible. The Court has no hesitation in finding that the LLCs were created solely to interfere with the rights of a lawful judgment creditor, and that the Tollivers acted with the intent to hinder, delay, or defraud a creditor. Under § 119(B) of the Act, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so

24

orders may levy execution on the asset transferred or its proceeds." Scottsdale will be permitted to execute on property held by the LLCs to satisfy the judgment for attorney fees (Dkt. # 243).

On October 26, 2011, the magistrate judge entered a restraining order, by agreement by the parties, prohibiting defendants from placing encumbrances on the LLCs' assets or transferring assets from the LLCs absent an order from the Court. Dkt. # 268. The Court has reviewed the transcript of the hearing and the magistrate judge's order, and it is clear that the agreed restraining order was to remain in effect only while plaintiff's applications were pending. Defendants have filed a motion (Dkt. # 310) to modify the restraining order, but Scottsdale's applications will no longer be pending after entry of this Opinion and Order and defendant's motion is moot. However, the Court finds that it is necessary to ensure that defendants take no action to interfere with Scottsdale's execution on its judgment, because the Tollivers will be free to transfer or dispose of the LLCs' assets as soon as this Opinion and Order is entered. Under § 119(A)(3), the Court has the power to issue an "injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property . . . ." Defendant's motion (Dkt. # 310) suggests that the Tollivers will dispose of securities held by the LLCs to pay expenses incurred by the LLCs, but Scottsdale will likely seek to execute on the securities to satisfy its judgment. To avoid further delay in execution of the judgment, the Court will exercise its authority under § 119(A)(3) and the Tollivers are enjoined from interfering with service of the writs or execution on the LLCs' assets. Defendants may not dispose of the LLCs' assets or transfer assets out of the LLCs until Scottsdale's judgment is satisfied.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 287) and the supplemental report and recommendation (Dkt. # 304) are **accepted**, and Plaintiff's Application for Writ of Execution (Dkt. # 257), Plaintiff's Application for Writ of Execution (Dkt. # 258), and

Plaintiff's First Amended Application for Writ of Execution (Dkt. # 274) are **granted**.  Scottsdale is directed to submit proposed writs of execution to the Court Clerk no later than **May 8, 2012**, and the Court Clerk is ordered to issue the writs of execution as requested by plaintiff in its applications (Dkt. ## 257, 258, 274).

**IT IS FURTHER ORDERED** that defendants are enjoined from interfering with service of the writs or the execution ordered therein. Defendants may not dispose of the LLCs' assets or transfer assets out of the LLCs until Scottsdale's judgment is satisfied.

**IT IS FURTHER ORDERED** that the Motion of Defendants and MST Properties, LLC to Modify Restraining Order (Dkt. # 310) is **moot**, as the restraining order has been replaced by the injunction in the preceding paragraph.

**DATED** this 4th day of May, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

26